# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| BRIAN CORCORAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:10-cv-06825 |
| | ) | |
| THE CITY OF CHICAGO, | ) | Judge Andrea R. Wood |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW

Defendant The City of Chicago ("the City") hereby moves, pursuant to Federal Rule of Civil Procedure 50(a), for judgment as a matter of law. In support of this Motion, the City states as follows:

## I.    INTRODUCTION

Under Fed. R. Civ. P. 50(a), if a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for that party on that issue, the court may resolve the issue against the party. Fed. R. Civ. P. 50(a); *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 149 (2000). The standard for judgment as a matter of law "mirrors" the standard for granting summary judgment, such that "the inquiry under each is the same." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986)). "To avoid a directed verdict, the plaintiff must do more than argue that the jury might have disbelieved all of the defendant's witnesses. Rather, the plaintiff must offer substantial affirmative evidence to support her argument." *Heft v. Moore*, 351 F.3d 278, 284 (7th Cir. 2003).

To prevail, Plaintiff Brian Corcoran must show that: (1) he engaged in statutorily protected activity; (2) he suffered a materially adverse action taken by the employer; and (3)

there was a causal connection between the two. *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 404 (7th Cir. 2007). Corcoran has failed on all three of these elements. The City is entitled to judgment as a matter of law for all of the following reasons: (1) none of the alleged retaliatory actions Corcoran complains of were materially adverse; and (2) Corcoran did not engage in protected activity until he filed his EEOC Charge in March 26, 2010 (and there is no evidence his supervisors were aware that he did so).

## II. **ARGUMENT**

### A. **Corcoran Did Not Suffer a Materially Adverse Employment Action.**

For retaliation claims, a materially adverse employment action is one that would "dissuade a reasonable employee from making or supporting a claim of discrimination." *Hobbs v. City of Chicago*, 573 F.3d 454, 463 (7th Cir. 2009). In support of his retaliation claim, Corcoran testified that he experienced the following adverse employment actions:

1. He was assigned to Beat #1822F for over a year;

2. His police vehicle was taken away for approximately four months, which required him to walk a couple blocks to his post. He was not allowed to leave his post without face-to-face relief, or to obtain gas or car washes for his police vehicle without permission;

3. He received three false Summary Punishment Action Reports ("SPAR") and two false counseling reports ("CSR"); and

4. He was otherwise harassed in various ways designed to impede his ability to work for the City.

(Trial Tr. vol. 6B, 1157:14-23; 1167:1-10; 1168:20-1169:1; 1180-1183:11; 1187:18-1191:6; 1192:1-14; 1212:23-1213:8; 1241:20-1242:4, February 18, 2004.)[1] As discussed in the sections that follow, none of these actions taken individually or in the aggregate rises to the level of materially adverse.

---

[1] Trial Transcripts cited herein are attached as Exhibit A.

### 1. Corcoran's Assignment to Beat #1822F

Corcoran's alleged undesirable assignment to Beat #1822F, as a matter of law, is not the sort of significant action that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Railway Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotations omitted). Undesirable job assignments are not adverse employment actions if the assignments are within the employee's job duties.[2] Corcoran's assignment to Beat #1822F, along with thirty-four other 18th District police officers who also worked that assignment, was not a materially adverse employment action. (Pl.'s Ex. 3.)[3] Corcoran did not suffer any reduction in his salary or benefits, and his job title remained the same. (Trial Tr. vol. 6B, 1246:11-1250:7.)

### 2. Removal of Corcoran's car for approximately four months, not allowing Corcoran to leave his post without face to face relief and not allowing Corcoran to obtain gas or car washes for his vehicle are not adverse employment actions.

Corcoran's testimony that his department vehicle was removed for a "couple months," he was not allowed to leave his post without face-to-face relief, and was not allowed to obtain gas or car washes without permission also are not adverse employment actions. (Trial Tr. vol. 6B, 1157:14-23; 1167:1-10; 1168:20-1169:1.) These alleged actions are mere inconveniences that

---

[2] *Hobbs v. City of Chicago*, 573 F.3d 454, 463 (7th Cir. 2009). In *Hobbs*, the employee argued that being requested to drive on twenty different occasions when she had been given a driving assignment only once in the ten years prior to her complaints was an adverse action. *Id.* The court rejected that argument because the assignments given were clearly within her job duties and she did not suffer a loss of a job title or received less pay. *Id.* "A materially adverse action must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" *Id.* at 464, quoting *Nagle v. Vill. Of Calumet Park*, 554 F.3d 1106, 1120 (7th Cir. 2009); *Roney v. Illinois Dept. of Transp.*, 474 F. 3d 455, 461 (7th Cir. 2007) (finding that no material adverse action where plaintiff claimed he was assigned a "more dangerous job" because the assignment was customary and routine); *Stephens v. Erickson*, 569 F.3d 779, 791 (7th Cir. 2009) ("[d]ecisions involving a transfer or reassignment of job responsibilities indicate that such an action is not materially adverse unless it represents a significant alteration to the employee's duties, which is often reflected by a corresponding change in work hours, compensation or career prospects);

[3] *See Stephens*, 569 F.3d at 791-792 (7th Cir. 2009) (allegation of "occasionally being sent to purportedly dangerous neighborhoods," among others, when there was no allegation that plaintiff was the only employee required to perform such duties, "were insufficient to dissuade a reasonable employee from filing a discrimination charge" and summary judgment was appropriate); *Henry v. Lewis*, 539 F.3d 573, 587 (7th Cir. 2008).

resulted in no tangible job consequence, not materially adverse employment actions that would

dissuade a reasonable employee from complaining.

### 3. Corcoran's three SPARs and two counseling forms are not materially adverse employment actions.

#### i. Corcoran's May 15, 2009 and June 25, 2009 SPAR and Corcoran's January 23, 2010 and May 12, 2010 CSRs.

Oral or written reprimands do not constitute adverse employment actions that can support

a retaliation claim.[4] The May 15, 2009 SPAR Corcoran received from Sgt. Braithwaite

recommended only a reprimand. (Pl.'s Ex. 4.) Similarly, CSRs are not discipline. (Def.'s Ex.

14.)[5] Corcoran testified that he suffered no tangible job consequence as a result of his May 12,

2010 CSR, and there is no evidence of a tangible job consequence as a result of his January 23,

2010 CSR. (Trial Tr. vol. 6B, 1212:23-1213:8; 1241:20-1242:4, 1246:11-1250:7.) [6] The May

15th SPAR was dismissed by Deputy Chief James Keating and the June 25th SPAR was deleted

by Commander Ken Angarone. (Trial Tr. vol. 6B, 1183:5-18.)[7]

#### ii. Corcoran's June 3, 2009 SPAR

As a result of his June 3, 2009 SPAR that was upheld by Deputy Chief James Keating

based on Corcoran's failure to appear at check-off, Corcoran testified that he "took a day off

without pay" amounting to a loss of approximately $300.00. (Trial Tr. vol. 6B, 1190:21-1191:7.)

---

[4] *See Oest v. Ill. Dep't of Corrections*, 240 F.3d 605, 613 (7th Cir. 2001) (holding that neither "unfavorable performance evaluations" nor "oral or written reprimands" constitute adverse employment actions under our case law); *Grube v. Lau Industries, Inc.*, 257 F.3d 723, 729 (7th Cir. 2001) ("unfair reprimands or negative performance evaluations, unaccompanied by some tangible job consequence do not constitute adverse employment actions.") (Emphasis added).

[5] *See Ribando v. United Airlines, Inc.*, 200 F.3d 507, 510-11 (7th Cir. 1999) (holding that "counseling letters are not actionable as a matter of law"); *Sebastian v. City of Chicago*, 2008 U.S. Dist. LEXIS 60570, **101-02 (N.D. Ill., July 24, 2008) (Kendall, J.) (verbal counseling and informal meeting do not rise to the level of a materially adverse action where employee suffers no harm).

[6] *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 466 (7th Cir. 2002) (negative employment evaluations do not constitute adverse employment actions unless they are accompanied by some tangible job consequence such as "a reduction in pay or diminution in job responsibilities").

[7] *See Ajayi v. Aramark Bus. Servs.*, 336 F.3d 520, 531 (7th Cir. 2003) ("An unfulfilled threat, which results in no material harm, is not materially adverse."); *Nagle*, 554 F.3d at 1120 (7th Cir. 2009) (finding that a suspension that was not served did not constitute an adverse action.); *Stavropoulos v. Firestone*, 361 F.3d 610, 617 (11th Cir. 2004) ("[A]n action which, it turns out, had no effect on an employee is not an 'adverse action.'").

4

This one-day unpaid suspension, however, caused Corcoran no material harm and is not an actionable adverse employment action.[8]

### 4. Corcoran's allegations of other harassment do not amount to adverse employment actions.

#### i. Sgt. Byrne's actions

Corcoran testified that Sgt. Byrne gave Corcoran an EAP counseling brochure, requested that Corcoran tell the students at Jenner School to stop throwing snowballs, and refused to sign three of Corcoran's contact cards. (Trial Tr. vol. 6B, 1195:13-1196:17; 1208:22-1209:6; 1237:2-1239:8.) None of these actions culminated in a resulting material harm or tangible job consequence to Corcoran; they were nothing more than "petty slights or minor annoyances." *Burlington Northern*, 548 U.S. at 68.

#### ii. Sgt. Braithwaite's Actions

Corcoran testified that Sgt. Braithwaite "harassed" him when he was assigned to Beat #1822F by micro-managing and closely monitoring him. (Trial Tr. vol. 6A, 1152:3-6.) These are not materially adverse actions. [9]

#### iii. Change of Duties

Corcoran testified that his duties changed on a "daily basis" and that there was "no cohesion" after he was assigned to Beat #1822F. (Trial Tr. vol. 6B, 1158:14-24.) However, he testified to no adverse effects from these changes, other than the normal burden any employee experiences when adapting to different instructions. (Trial Tr. vol. 6B, 1158:14-1166:2.)

---

[8] *See Rhodes v. Ill. Dept. of Transportation*, 359 F.3d 498, 504-05 (7th Cir. 2004) (one-day disciplinary suspension without pay not actionable where it had only a negligible impact on her income and caused no material harm).

[9] *Stephens v. Erickson*, 569 F.3d 779, 790 (7th Cir. 2009) (noting that being stared or yelled at by supervisors is not an actionable harm); *Blackmon v. City of Chicago*, 836 F.Supp.2d 655, 665 (N.D. Ill. 2011) (being subjected to increased scrutiny by a supervisor does not qualify as an adverse job action); *Roby v. CWI, Inc.*, 2008 U.S. Dist. LEXIS 84701, *31-32 (N.D. Ill. Sept. 11, 2008) (court granted summary judgment on plaintiff's retaliation claim noting that allegations supervisor "would stare at her, taunt her, and told her nothing would happen to him because he is a 'Mason'" did not satisfy the adverse action element).

In sum, a reasonable jury would not have a legally sufficient basis to find that any of the retaliatory actions that Corcoran complains of were material adverse actions. The Seventh Circuit has repeatedly cautioned courts against "trundling out the heavy artillery of federal antidiscrimination law" in cases where the complained-of actions were not materially adverse, lest "every trivial personnel action that an irritable, chip-on-the-shoulder employee [does] not like . . . form the basis of a discrimination suit."[10] Corcoran's testimony here describes exactly such "trivial personnel action[s]." Therefore, the City is entitled to judgment as a matter of law.

**B.** **Corcoran Did Not Engage in Protected Activity Until He Filed His EEOC Charge on March 26, 2010**

      **1.** **Corcoran Had No Objectively Reasonable Belief That He Reported Conduct That Violated Title VII.**

To be protected under Title VII, opposition must be based on a good-faith and *objectively reasonable* belief that it is opposition to a statutory violation of Title VII. *Hatmaker v Memorial Medical Center*, 619 F.3d 741, 747 (7th Cir. 2010).[11] A complaint about a single comment is not sufficient for an employee to show he has an objective belief that he is complaining about conduct prohibited by Title VII. In *Breeden*, the Supreme Court rejected a Title VII retaliation claim because "[n]o reasonable person could have believed that the single incident . . . violated Title VII's" prohibition against sexual harassment. *Id.* at 271.[12] Here, Corcoran's report of the alleged racial slur to Officer Campbell on April 12, 2009 and his participation in the IPRA

---

[10] *E.g., Herrnreiter v. Chicago Housing Authority*, 315 F.3d 742, 745 (7th Cir. 2002) (finding no material adverse action where plaintiffs had a "purely subjective preference for one position over another").

[11] Since the analysis for determining whether an employee reasonably believes a practice is unlawful is an objective one, the issue may be resolved as a matter of law. *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268 (2001) (resolving the objective reasonableness of Title VII plaintiff's beliefs on summary judgment).

[12] *See also Jordan v Alternative Res. Corp.*, 458 F.3d 332 (4th Cir. 2006), cert. denied, 127 S. Ct. 2036 (2007) (plaintiff could not make prima facie case for retaliation because the evidence did not support a finding that he had a reasonable, good faith belief that his work environment was racially hostile; plaintiff claimed he was retaliated against after complaining that a coworker had uttered a single racial slur); *Butler v Alabama Dept. of Transp.*, 536 F.3d 1209 (11th Cir. 2008) (plaintiff did not have objectively reasonable belief that co-worker's "[u]ncalled for, ugly, racist" remark about another driver was an unlawful job practice; thus, retaliation claim failed as a matter of law).

investigation about a single purported slur on September 2, 2009 are not protected activities because Corcoran's belief that he was opposing an unlawful employment practice was not objectively reasonable as a matter of law.

### 2. Corcoran's Report of the Alleged Slur to Officer Campbell Does Not Constitute Protected Activity

Even if Corcoran had an objectively reasonable belief that he opposed an unlawful employment practice, simply providing spiritual guidance or friendship to a complaining co-worker is not protected activity.[13] *See e.g., Bowden v. Kirkland & Ellis*, 2010 U.S. Dist. LEXIS 91730, *37 (N.D. Ill., Sept. 3, 2010)[14] (Pallmeyer, J.) (citing *Drake v. Minnesota Min. & Mfg. Co.*, 134 F.3d 878, 886 (7th Cir. 1998)).[15] Mere affiliation with another employee's complaint does not constitute protected activity and dooms a retaliation claim as a matter of law. *Id.* at *51. Here, Corcoran never reported Sgt. Braithwaite's alleged racial slur to anyone except Officer Campbell. Corcoran testified that he told Officer Campbell about the alleged slur only because he wanted Officer Campbell to know what Sgt. Braithwaite thought about him (Campbell) and about his race – not for any other purpose. (Trial. Tr. vol. 6A, 1144:19-21; 1145:7-13.) He did not testify that he told Officer Campbell about it in hopes or expectations that Officer Campbell would do anything to oppose the alleged discrimination. *Id.* Officer Campbell made his own report of the alleged racial slur. Corcoran did nothing to assist Officer Campbell or otherwise participate in opposing any alleged discrimination. Corcoran later appeared for an interview

---

[13] The language of Title VII extends protection from discrimination to all who "participate" or "assist" in opposing prohibited discrimination. *See, e.g., Eichman v. Indiana State University Bd. of Trustees*, 597 F.2d 1104, 1107 (7th Cir. 1979).

[14] Unreported cases are attached hereto as Exhibit B.

[15] In *Bowden*, an employee's assistance in a co-worker's charge of discrimination was sufficient opposition to qualify as a protected activity because she (1) consulted with the co-worker in private and agreed that racial discrimination was a problem with their employer; (2) initially instructed the co-worker to contact a lawyer; (3) urged the co-worker to file EEOC charges; and (4) compiled materials that the co-worker ultimately presented to the EEOC. *Id.* at *51-52. Corcoran did not testify that he did any of those things here.

before the IPRA, as he was required to do. Clearly, such action is nothing more than mere affiliation with a complaining employee and fails as a matter of law to constitute protected activity.

### 3. Corcoran Cannot Recover For Alleged Retaliation After Filing His Charge with the EEOC Because He Cannot Establish The Alleged Retaliators Knew of his EEOC Charge.

Corcoran could not have engaged in a protected activity until he filed his charge of discrimination with the EEOC on March 26, 2010. Thus, Corcoran can only seek to recover for alleged retaliatory acts that took place after he filed that charge – and to the extent that he can establish that Capt. Zawis, Sgt. Braithwaite, Deputy Chief Georgas, or Sgt. Byrne had knowledge of it.[16] There has been no testimony that any of these alleged retaliators knew about the EEOC charge between its filing on March 26, 2010 and Corcoran's transfer out of the district on May 16, 2010. The City is entitled to summary judgment as a matter of law.

## III.   CONCLUSION

No reasonable jury could find for Corcoran on his retaliation claim because it has no basis in the record. First, none of the actions that Corcoran complains of are materially adverse employment actions. Second, Corcoran did not engage in protected activity until he filed his charge of discrimination on March 26, 2010, and there is no evidence that any of the alleged retaliators were aware at the time that he filed a charge. For these reasons, the City requests that the Court enter an order granting its Motion for Judgment as a Matter of Law, and for any additional relief the Court deems appropriate.

---

[16] *See Luckie v. Ameritech Corp.,* 389 F.3d 708, 715 (7th Cir. 2004) (decision-maker must have had actual knowledge of the complaints of discrimination in order to retaliate for such complaints); *Miller v. Am. Family Mut. Ins. Co.,* 203 F.3d 997, 1008 (7th Cir. 2000) ("[A]n employer cannot retaliate when it is unaware of any complaints.").

Dated: February 19, 2014

Respectfully submitted,

CITY OF CHICAGO

By:  /s/ James F. Botana
     One of Its Attorneys

James F. Botana
Neil H. Dishman
Paul J. Stroka
Stephanie E. Shirley
JACKSON LEWIS P.C.
150 North Michigan Avenue, Suite 2500
Chicago, Illinois 60601
Telephone (312) 787-4949
Facsimile (312) 787-4995

**CERTIFICATE OF SERVICE**

I, James F. Botana, an attorney, certify that on this 19th day of February, 2014, this **DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW** was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following attorney of record for the Plaintiff:

Jonathan R. Ksiazek
Edward M. Fox
Ed Fox & Associates
300 West Adams
Suite 330
Chicago, Illinois 60606

By: /s/ James F. Botana
James F. Botana

James F. Botana
Neil H. Dishman
Paul J. Stroka
Stephanie E. Handler
JACKSON LEWIS P.C.
150 North Michigan Avenue
Suite 2500
Chicago, Illinois 60601
Phone: (312) 787-4949
Fax: (312) 787-4995