IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BRIAN CORCORAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 10-cv-6825 |
| | ) | |
| THE CITY OF CHICAGO, | ) | Judge Andrea R. Wood |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S PETITION FOR ATTORNEYS' FEES AND COSTS**

NOW COMES the Plaintiff, BRIAN CORCORAN ("Plaintiff" or "Corcoran"), by and through his attorneys, ED FOX & ASSOCIATES, and in support of his Petition for Attorneys' Fees and Costs states as follows:

## I.     INTRODUCTION

After four years of litigation and a two week trial, on February 24, 2014 a jury awarded the Plaintiff, a City of Chicago police officer, damages in the amount of $134,000 on his one claim for retaliation under Title VII. This Honorable Court entered Judgment on the verdict on February 24, 2014 in the amount of $134,300, which included Corcoran's lost wages in the amount of three hundred dollars ($300.00). The verdict entered on February 24, 2014 on Plaintiff's sole claim of retaliation was an unequivocal victory. Thus, Plaintiff's counsel should be granted their full attorneys' fees and costs under § 1988.

The award was remarkable because over the course of four years the Defendant never offered a cent to Plaintiff to resolve this case despite the Plaintiff's numerous settlement demands. The Plaintiff's jury award of $134,000 was also notable because it was just $16,000 less than the range of damages suggested to the jury by Plaintiff's counsel Ed Fox in closing

1

arguments and consisted solely of emotional damages. In short, Plaintiff accomplished everything that he reasonably set out to accomplish in this litigation. Under the attorney fee case law, Plaintiff clearly qualifies as a fully-entitled prevailing party.

Plaintiff's counsel litigated this case aggressively over the course of four years and invested considerable time and out-of-pocket expenses to win a substantial and groundbreaking verdict. It is hard to imagine that Plaintiff's counsel could have done better for the Plaintiff, given the difficulty of the case. While Plaintiff's Title VII retaliation claim against the City of Chicago was notable, the case was long, difficult and highly risky. The facts of this case involved highly specialized knowledge of the internal policies and procedures of the City of Chicago police department, of which Plaintiff's counsel was uniquely qualified to handle, and presented numerous legal hurdles to overcome. In order to get to trial in this matter, Plaintiff's counsel took over 12 depositions, and briefed a motion to dismiss, motion to compel and a motion for summary judgment. There were 11 trial days of argument and testimony from over 25 witnesses, many of whom were hostile to the Plaintiff. Plaintiff's two attorneys were matched against Defendant's four attorneys and paralegals.

Having chosen to fight the case so vigorously until the very end, the City is in no position to begrudge Plaintiff's counsel the right to have expended the hours necessary to secure the Plaintiff's victory. *See* Ex. L, Local Rule 54.3 Statements[1]. Over the past four years, the City paid an outside law firm, Jackson Lewis, P.C., *more than $657,000* to try to defeat Plaintiff. The City enjoyed the benefit of very comprehensive legal work on its behalf. Its defense attorneys

---

[1] Plaintiff's Exhibits are attached to his Appendix of Exhibits filed concurrently with this Memorandum of Law. Plaintiff has attached three versions of the Joint Fee Statement to Exhibit P. Exhibit P-1 is Plaintiff's Local Rule 54.3 Statement filed with the Court on May 20, 2014 because Defendant did not provide Plaintiff with its proposed revisions before May 19, 2014. Exhibit P-2 is an updated version of Plaintiff's Local Rule 54.3 Statement to include all attorneys' fees incurred to date up to and including the filing of Plaintiff's Fee Petition. Exhibit P-3 is Defendant's draft of the Joint Local Rule 54.3 Statement provided to Plaintiff's counsel on June 10, 2014.

spent more than two times the time that Plaintiff's counsel worked on this case. Against that backdrop, Plaintiff's counsel's lodestar, *which is $200,000 less than* the City spent defending the same case, is presumptively reasonable. Therefore, Plaintiff's Fee Petition should be granted.

## II.    ARGUMENT

### A.    As The Prevailing Party, Plaintiff's Counsel Are Presumptively Entitled To Their Reasonable Attorneys' Fees

#### 1.    Background

On October 22, 2010, Plaintiff filed his complaint against the City of Chicago alleging a claim of retaliation under Title VII and a state law claim of intentional infliction of emotional distress ("IIED"). *See* Plaintiff's Ex. A. Plaintiff alleged in his complaint that the Defendant retaliated against him after he overheard a Sergeant in the 18th District named Kelly Braithwaite use a racial slur to describe an African-American officer named Alvin Campbell. *Id.* Plaintiff's claim of retaliation arose from actions that the Defendant took against Plaintiff after he witnessed the racial slur and participated in a resulting investigation into Sergeant Braithwaite's conduct. *Id.* As alleged in Plaintiff's Complaint, the Defendant retaliated against Plaintiff when it took actions such as placing him on a "punishment car" assigned to Cabrini Green; requiring him to get face-to-face relief while on the "punishment car"; falsely disciplining him on five occasions; randomly changing the nature of his assignment; subjecting him to different work conditions than his fellow officers; restricting his gas and car wash privileges; subjecting him to constant supervisory scrutiny; requiring him to do walk-downs of buildings on an hourly basis; and refusing to remove him from the "punishment car" for thirteen months despite his requests. *Id.* Plaintiff's Complaint sought general and compensatory damages. *Id.*

On May 25, 2011, Judge Pallmeyer granted the Defendant's motion to dismiss the Plaintiff's IIED claim leaving Plaintiff with a sole claim of retaliation against the Defendant. *See*

3

Plaintiff's Ex. B, Docket of *Corcoran v. City of Chicago*, D.E. #26. The parties completed discovery on November 9, 2011. Discovery consisted of the production of over 9,000 pages of documents between the parties, several rounds of written discovery, a motion to compel, and twelve depositions.[2] The Defendant filed for summary judgment on Plaintiff's retaliation claim on February 15, 2012. Ex. B, D.E. #48. The case was transferred to Judge Lee, who denied the Defendant's Motion for Summary Judgment on March 22, 2013. Ex. B, D.E. #75. After Judge Lee denied the Defendant's Motion for Summary Judgment, the case was set to move forward to trial before Judge Lee who had set several trial dates in 2013 before being rescheduled to February 10, 2014. On November 18, 2013, the case was reassigned to this Honorable Court. Trial on Plaintiff's retaliation claim began on February 10, 2014 and lasted for eleven trial days through February 24, 2010. On February 24, 2010, the jury returned a verdict in favor of the Plaintiff on his claim of retaliation in the amount of $134,000. The $134,000 jury award was solely based upon the Plaintiff's emotional damages. This Honorable Court entered Judgment on the verdict in the amount of $134,300 on the same date, which included Plaintiff's lost wages in the amount of three hundred dollars ($300). Ex. B, D.E. #166; Ex. K.

### 2. Plaintiff Was Unquestionably A Prevailing Party

Under applicable law, a plaintiff may be considered a prevailing party "…if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Sottoriva v. Claps*, 617 F.3d 971, 975 (7th Cir. 2010). When a party prevails at trial in a civil rights case, as Plaintiff did here, the prevailing attorneys are entitled to recover

---

[2] Plaintiff's Counsel also represented Officer Campbell in a case against the City of Chicago titled *Campbell v. City of Chicago*, Case No. 12-cv-1165, alleging substantially similar allegations to those that Plaintiff raised in his complaint. In the *Campbell* matter, Plaintiff's counsel took and/or attended the depositions of six individuals (Kenneth Angarone, James Boyle, Brian Byrne, Alvin Campbell, Jose Mendez, and Cynthia Schumann) who testified in the trial in this matter. In his bill of costs, Plaintiff is seeking reimbursement for transcript copies of the depositions taken which were necessarily obtained for Plaintiff's trial.

4

their reasonable attorneys' fees for the services they provided. *County of Riverside v. Rivera*, 477 U.S. 561, 578 (1986) (fee awards are designed "to encourage the bringing of meritorious claims which might otherwise be abandoned because of the financial imperatives surrounding the hiring of competent counsel").

Plaintiff won a substantial jury award on his one claim of retaliation at trial. Thus, there is no question that Plaintiff is the "prevailing party" within the meaning of 42 U.S.C. §1988(b). Plaintiff's claim of retaliation was the only claim at issue in this case after the pleadings stage. Plaintiff sought compensatory damages in his initial pleading and obtained an award of $134,000 for the emotional distress that he suffered and lost wages in the amount of $300. Thus, he achieved his entire purpose for suing the City of Chicago. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Farrar v. Hobby*, 506 U.S. 103, 111-112 (1992). Based on the fact that Plaintiff did not lose on any aspect of his case at summary judgment or trial, there can be no dispute that Plaintiff was a prevailing party.

**B.     The Number Of Hours Billed In This Case Was Reasonable, And Should Be Approved Based Upon *Hensley* Factors**

As outlined above, the litigation in this case has been intensive and hard-fought, involving a dozen depositions[3], multiple waves of written discovery, and numerous contested motions determined by this Court as well as Judge Pallmeyer and Judge Lee. Trial in this matter was grueling and longer than most civil trials held in the Northern District of Illinois because of the number of witnesses and factual and legal issues involved.

Under lodestar principles, the amount of the attorney fee award is calculated by multiplying reasonable hours times hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The lodestar is presumptively an appropriate measure of the fee award. *Blum v. Stenson*, 465

---

[3] As referenced above, six depositions taken in the sister-case, *Campbell v. City of Chicago*, were used in the *Corcoran* case.

U.S. 886, 897 (1984). As the Supreme Court has stated, this "strong presumption that the lodestar figure … represents a reasonable fee is wholly consistent with the rationale behind [§ 1988]." *Blanchard v. Bergeron*, 489 U.S. 87, 95 (1989). However, the loadstar may be adjusted either up or down based upon a variety of factors such as:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability of the case; (11) the nature and length of the professional relationship with the client; (12) awards in similar cases.

*Hensley*, 461 U.S. at 430.

In total Ed Fox & Associates seeks compensation for 1321.65 hours billed over the four-year history of the case, including time spent on post-trial matters and the fee petition[4], for a lodestar of $446,329.00. The hours billed are documented in Plaintiff's counsel's time sheets updated through today's date, attached hereto as Group Exhibits C, D, and E, and summarized in the following chart.

| Lawyer | Hours | Rate | Total |
|---|---|---|---|
| Ed Fox | 377.40 | $510 | $192,474.00 |
| Jonathan Ksiazek | 797.50 | $300 | $239,250.00 |
| Law clerk | 146.75 | $100 | $14,675.00 |
| **TOTAL** | | | **$446,399.00** |

---

[4] "Ample case law supports the proposition that when a prevailing party is forced to litigate to obtain a fee award, a component of that award may include a reasonable fee for the time expended in preparing and litigating the fee petition." *Trs. of the Chicago Plastering Inst. Pension Trust v. Cork Plastering, Inc.,* 2008 WL 728897, at *6 (N.D. Ill. Mar. 18, 2008).

Plaintiff's attorneys' fees are reasonable and justified based upon the success that Plaintiff achieved. This court should award Plaintiff's counsel their lodestar for the reasons discussed below.

### 1. The Amount Involved and Results Obtained

The most significant *Hensley* factor to be considered by the Court is the degree of Plaintiff's success in relation to his claims. *Farrar*, 506 U.S. at 114; *Telepro, Inc. v. Renello*, 1994 WL 380607 (N.D. Ill. July 18, 1994) ("The degree of Plaintiff's success in relation to his claims is the most critical factor in determining the amount of attorney's fees awarded."). Defendant cannot dispute that Plaintiff's victory on his Title VII retaliation claim in the amount of $134,300 was significant and substantial. In fact, Defendant filed a motion for remittitur based upon the argument that it believes it was "too good" of an award. The award is also notable from a public policy standpoint in that Plaintiff's victory will contribute to the deterrence of future civil rights violations against City of Chicago whistleblowers similar to the Plaintiff. Based upon the fact that Plaintiff obtained the highest level of success in the most significant *Hensley* factor, Plaintiff's attorneys' fees should be awarded at their full requested amount.

### 2. Plaintiff's Billable Hours Compares Very Favorably To The Number Of Hours Billed By The Defense In This Litigation

"The defendant's fees may provide the best available comparable standard to measure the reasonableness of plaintiffs' expenditures in litigating the issues of the case. Each party in this case had to prepare to question the same witnesses, as well as review the same evidence and to resolve the same issues." *Chicago Prof'l Sports Ltd. v. National Basketball Ass'n.*, 1996 WL 66111, at *3 (N.D. Ill. Feb. 13, 1996). Compared to the 1,321.65 hours requested by Plaintiff's counsel, Defendant's counsel from Jackson Lewis billed the City a total of 2,854.8 hours (as of March 31, 2014) amounting to $626,809.04 in attorney's fees to outside defense counsel. *See* Ex.

F (summary of Defendants' counsel's hours by firm and timesheets of Defendant's counsel). The Defendant's invoices list five lawyers and three paralegals that worked on this matter over the course of four years. This figure does not include the time billed by in-house corporation counsel lawyers in their supervisory role as the client. A summary of the Defendant's hours, as well as a comparison with Plaintiff's requested hours, is outlined below.

| Defendant's Lawyers | Hours | Plaintiff's Lawyers | Hours |
|---|---|---|---|
| James Botana; Neil Dishman; P. Rocks (partners) | 1,312.90 | Ed Fox (partner) | 377.40 |
| Stephanie Shirley; Paul Stroka (associates) | 1,223.60 | Jonathan Ksiazek (associate) | 797.50 |
| Paralegals | 317.4 | Law Clerk | 146.75 |
| **TOTAL** | **2,853.9** | | **1,321.65** |

The overall comparison, with more than two hours billed by the defense for every hour sought by Plaintiff, strongly supports the reasonableness of Plaintiff's hours. *See Garcia v. City of Chicago*, 2003 WL 22175620, at *4 (ND. Ill. Sept. 19, 2003) ("in light of the number of hours, attorneys, and legal assistants working on this case on behalf of the City, this court cannot say that L&L's hours were aggregately unreasonable"). The fact that Defendant paid their attorneys more money to obtain a worse result lends even more credence to the reasonableness of Plaintiff counsel's requested fees.

### 3. Plaintiff's Billable Hours Are Reasonable In Light Of the Fact That Defendant Never Offered Any Money to Settle This Case

In determining an appropriate fee award, courts also consider whether the party claiming attorney's fees rejected substantial settlement offers. *Moriarty v. Svec*, 233 F.3d 955, 967 (7th Cir. 2000). As noted, the Defendant failed to offer any money to settle this case. If Defendant

had made a reasonable offer to Plaintiff, then Plaintiff would have engaged settlement discussions and could have potentially resolved the case short of trial. Because of the Defendant's failure to offer any amount to resolve this case, Plaintiff had to incur fees in order to bring this case to judgment. Plaintiff's fees were reasonable and necessary based upon the Defendant's refusal to engage in any meaningful settlement negotiations.

**C.      Plaintiff's Counsel's Hourly Rates Are Reasonable And Should Be Approved**

The purpose and intent of § 1988 is to attract talented lawyers to civil rights cases. By promising to award the prevailing hourly rates, lawyers who could otherwise command high billing rates in commercial pursuits are encouraged to represent clients such as Plaintiff. *See Casey v. City of Cabool*, *Mo*. 12 F.3d 799, 805 (8th Cir. 1993) (citing S. Rep. No. 1011, 94th Cong., 2d Sess. 5 (1976), reprinted in 1976 U.S.C.C.A.N. 5908, 5913) ("It is intended that the amount of fees awarded under [§ 1988] be governed by the same standards which prevail in other types of equally complex Federal litigation, such as antitrust cases ….")).

Courts often determine the market hourly rate in fee petitions by looking at "the rate charged by lawyers in the community of reasonably comparable skill, experience, and reputation." *Muzikowski v. Paramont Pictures Corp.,* 477 F.3d 899, 909 (7th Cir. 2007). In doing this courts examine the affidavits of the attorneys involved as well as third party affidavits "from other attorneys disclosing their rates for similar cases or through rates courts have awarded in other fee petitions." *Id.* Once a fee applicant presents sufficient evidence to establish the reasonableness of the rates sought, the burden shifts to the other side to present evidence to justify the award of a lower rate. *Gautreaux v. Chi. Housing Authority,* 491 F.3d 649, 559–60 (7th Cir. 2007).

### 1.     Prevailing Market Rates

*O'Sullivan v. City of Chicago,* 484 F.Supp.2d 829, 839 (N.D. Ill. 2007) is an instructive case for the purposes of determining the market rates of attorneys in a case similar to the one at bar.  The plaintiffs in *O'Sullivan* were police officers who brought a Title VII and retaliation case against the City of Chicago based upon actions of the Chicago Police Department.  The case went to trial in April 2006.  A federal jury awarded each of the plaintiffs in *O'Sullivan* compensatory damages ($250,000, $50,000 and $25,000) on their retaliation claims.  *O'Sullivan*, 484 F.Supp.2d at 832.  In *O'Sullivan*, the City of Chicago *agreed* to an hourly rate of $450.00 for attorney Elizabeth Hubbard.  *Id*., at 837-838. From doing online research, Ms. Hubbard appears to be a respected attorney performing employment and domestic relations work since 1974.  *See* Ex. M.  The City of Chicago also agreed to an hourly rate for attorney Elisabeth Shoenberger (now, Elisabeth Efird) of $335.00.  *O'Sullivan*, 484 F.Supp.2d at 834.  Online research shows Ms. Efird to have been an attorney since 1997 or about 9 years at the time of the trial.  *Id*.  Seven years have passed since the City agreed to these hourly rates for Hubbard and Efird.  It is notable that here, in a case with a similar result seven years later, the City is requesting that the Court award attorneys of similar experience significantly less ($411 and $250).

In consumer law cases, several courts have reviewed fee awards approved for the Chicago law firm of Edelman, Combs, Latturner & Goodwin ("Edelman Combs").  Edelman Combs has a long-established practice in the consumer law field, which is federal statutory work similar to Title VII employment cases.  Some examples of awards to the Edelman Combs firm are as follows:  In 2009, in the case of *In re Trans Union Corp. Privacy Litig.,* No. 00 C 4729, 2009 WL 4799954, at *20 (N.D.Ill. Dec. 9, 2009), Judge Robert Gettleman approved a $550 rate for attorney Daniel Edelman ("Edelman").  That same year, in *Jones v. Ameriquest Mortg. Co.,*

No. 05 C 432, 2009 WL 631617, at *4 (N.D.Ill. Mar. 10, 2009), Judge David Coar approved rates of $465 per hour for partners James Latturner ("Latturner"), Catherine Combs ("Combs"), and Tara Goodwin ("Goodwin"), and a rate of $250 per hour for an associate who was six or seven years out of law school during the relevant period. In 2008, Judge Sam Der–Yeghiayan approved rates of $450 per hour for partners at the Edelman firm and $210 per hour for the same associate. *See Hamm v. Ameriquest Mortg. Co.,* 549 F.Supp.2d 1018, 1022 (N.D.Ill. 2008). Lastly, in 2012, Judge Blanche Manning approved rates of $400 per hour for work done in 2011 by attorneys Edelman, Combs, and Latturner in *Jablonski v. Riverwalk Holdings, Ltd.,* No. 11 C 840, 2012 WL 3043687, at *1 (N.D. Ill. July 12, 2012). Edelman, Combs and Latturner had at that time, respectively, thirty-six, thirty-six, and fifty years of practice experience. *Id.*

The case of *Gibson v. City of Chicago,* 873 F.Supp.2d 975, 984-985 (N.D. Ill. 2012), is also a useful guide for attorney's fees in the civil rights context. *Gibson* was a case against the City of Chicago for violations of Section 1983, rather than Title VII. *Gibson,* 873 F. Supp at 981. However, the firm that represented the Plaintiff in *Gibson,* Jackowiak Law Offices, is a civil rights firm comparable to Ed Fox & Associates. In *Gibson,* there was a Plaintiff's verdict and a petition for attorney fees. *Id.* On July 6, 2012, Judge Castillo awarded Lawrence Jackowiak an hourly rate of $395. *Id.* at 983-984. Online research shows that Mr. Jackowiak handles Section 1983 cases and has been in practice since 1996, or about 16 years at the time of the opinion. Ex. M. This is twelve years less than Mr. Fox had practiced law at the time of the trial in Corcoran. The Court also ordered $395 per hour for Torreya Hamilton, a civil rights lawyer who has also been in practice since 1995. *Gibson,* 873 F.Supp.2d at 985. Notably the City *agreed* to fees of $275 for Adele Nicholas who online research shows has been in practice

since 2008 or 4 years at the time of the opinion.  *Id.*; Ex. M.  Again, the City agreed to this rate two years before trial in this matter.

In support of the prevailing market rates in 2014 for attorneys comparable to Plaintiff's counsel, Plaintiff has attached the affidavits of Paul Strauss, Adele Nicholas, and Julie Herrera. Exhibits H, I, and J respectively.  As demonstrated through his affidavit, Mr. Strauss has performed employment litigation work since 1981 and bills at a rate of $550.00 per hour.  Ms. Nicholas and Ms. Herrera have been working in the area of civil rights for the same amount of time as Jonathan Ksiazek and their billing rates are $300.00 per hour and $350.00 per hour respectively.

### 2.  The Laffey Matrix

In addition to the prevailing market, the United States Attorney's Office for the District of Columbia has created the Laffey Matrix to provide an official guideline for "reasonable" rates in fee-shifting cases. *Adcock-Ladd v. Secretary of Treasury*, 227 F.3d 343, 347 n.3 (6th Cir. 2000) (describing Laffey Matrix as "an official statement of market-supported reasonable attorney fee rates"); Ex. Q. "The matrix is intended to be used in cases in which a 'fee-shifting' statute permits the prevailing party to recover 'reasonable' attorney's fees." *See* Laffey Matrix Explanatory Note, Ex. Q.  Rates in the Laffey Matrix have been approved repeatedly by Courts of Appeals. *Id.*  The 2014 Laffey Matrix provides the following rate guidelines:

| Experience | Hourly Rate |
|---|---|
| 20+ years | 510 |
| 11-19 years | 450 |
| 8-10 years | 360 |
| 4-7 years | 295 |
| 1-3 years | 250 |
| Paralegal/Law Clerk | 145 |

*See id.*

12

Use of the Laffey Matrix to set "reasonable" rates has been approved, either expressly or implicitly, by Northern District of Illinois on numerous occasions. *See Arch v. Glendale Nissan*, 2005 WL 1421140, at *1 (N.D. Ill. June 7, 2005); *Berg v. Culhane*, 2011 WL 589631, at *3 (N.D. Ill. Feb. 10, 2011); *Hadnott v. City of Chicago*, 2010 WL 1499473, at *6 (N.D. Ill. Apr. 12, 2010); *Catalan v. RBC Mortgage Co.*, 2009 WL 2986122, at *6 (N.D. Ill. Sept. 16, 2009); *Decker v. Transworld Sys., Inc.*, 2009 WL 2916819, at *5 (N.D. Ill. Sept. 1, 2009); *Robinson v. City of Harvey*, 2008 WL 4534158, at *7 (N.D. Ill. Oct. 7, 2008); *Lopez v. City of Chicago*, 2007 WL 4162805, at *8 (N.D. Ill. Nov. 20, 2007).

Courts outside of Washington D.C. typically adjust the Laffey Matrix for a "locality pay differential." *See Schultz v. City of Burbank,* 2007 WL 1099479, *2 (N.D. Ill. Apr. 10, 2007) (M.J. Soat Brown) (adding 4% to the Laffey Matrix). The locality pay differential for Chicago in 2014 is 25.10% versus 24.22% for the D.C. area, meriting a .88% increase over the Laffey figures. *See* Ex. R; *see also Pickett v. Sheridan Health Care Center*, 664 F.3d 632, 650 (N.D. Ill. Dec. 15, 2011) ("another decision in the district suggested that the high cost of living in Chicago necessitates an upward adjustment to the Matrix").

The Laffey Matrix as adjusted for the locality differential would dictate the following rates: $514.49/hour for Ed Fox (who is seeking $510/hour), $297.60/hour for Jonathan Ksiazek (who is seeking $300/hour) and $146.28/hour for Ed Fox & Associates' law clerks (for which $100/hour is being sought). Plaintiff's counsel's proposed rates are thus directly in line with, or slightly below, the Laffey Matrix presumptions and should thus be approved as reasonable.

3.      **Given Their Qualifications and Accomplishments in this case, Plaintiff's Counsel Should Be Awarded Their Requested Rates**

As with the number of hours billed, Plaintiff's counsel's hourly rates are set forth on the Joint Fee Statement attached hereto as Exhibit P. Plaintiff discusses the justification for these rates below.

a.      **Ed Fox**

Over the four years of this litigation, Ed Fox served in a supervisory capacity, providing needed consistency and advice about strategic decisions. Mr. Fox billed efficiently, billing less than 40 hours total from the beginning of litigation in 2010 through and including 2013. Mr. Fox's time concentrated on strategizing and preparing for trial and conducting the trial. Ex. C. Ed Fox seeks $510/hour, which is less than the $514.49/hour adjusted Laffey Matrix rate and the private sector ranges of $550 awarded to attorney Daniel Edelman in 2009 and Mr. Strauss's billing rate of $550 discussed above in the case law and affidavits. The $510/hour rate sought by Mr. Fox is appropriate.

Mr. Fox has been in practice roughly 28 years. Mr. Fox has been always substantially involved in employment litigation in both California and Illinois and has tried more than 60 civil rights cases to a jury (and numerous more bench trials). In connection with discrimination and retaliation issues Mr. Fox has testified before the United States Congress House Ways and Means Committee on racial profiling. In 2009, Mr. Fox won an Award for Excellence in Pro Bono and Public Interest Service. As set forth more fully in his declaration, attached hereto as Exhibit C, Mr. Fox has enjoyed success in a wide range of employment litigation issues, and has been the owner of his law firm since 1998 (with 5 attorneys presently) in which civil rights issues, including employment discrimination/retaliation play a large role. *See* Ex. C.

14

Mr. Fox has had numerous successful Appellate and District Court opinions in both the Seventh and Ninth Circuits. He has helped shaped the law in connection with cavity searches at O'Hare airport, the ability to conduct random drug searches in the workplace in California, and this past year, evidentiary issues in connection with prior arrests in excessive force/false arrest cases. *See, e.g., Overby v. Chevron* 884 F.2d 470 (9th Cir. 1988); *Anderson v. Cornejo,* 355 F.3d 1021 (7th Cir. 2004); and *Barber v. City of Chicago, et al.,* 725 F.3d 702 (7th Cir. 2013). Mr. Fox has presented at Seminars on Civil Rights issues, the most recent being in 2013 for the Lorimar company on section 1983 issues. Ex. C.

With respect to billing rates, just this past month Judge Grady of the Northern District of Illinois awarded Mr. Fox $510.00 per hour in a wage and hour case titled *Bocik, et al., v. Matthews Drywall and Decorating Inc.,* Case No. 13-cv-7011. Ex. C. In 2011, Mr. Fox resolved attorney's fees in two Section 1983 civil rights cases (*Jones v. Clark, et al.* 07-cv-461 and *Hale v. City of Chicago, et al.,* 09-cv-4918) after obtaining a verdict for his client. In both cases, one of which was against the City of Chicago, the Defendants agreed to pay Mr. Fox $465.00 per hour. *Id.* This Court should award Mr. Fox the same rate he obtained less than one month prior to the filing of this petition, $510/hour.

### b.      Jonathan Ksiazek

Mr. Ksiazek is a sixth-year attorney, having graduated from law school in 2008. He served as the main attorney on this case and conducted all of the depositions, as well as the majority of briefing in this case. Along with Mr. Fox, Mr. Ksiazek performed a substantial amount of work to prepare for and attend trial. Mr. Ksiazek joined Ed Fox & Associates in 2009, and his considerable litigation experience is summarized in his Affidavit. *See* Ex. D. In the past, Mr. Ksiazek has also taught and coached the mock trial teams at the University of Illinois and Northwestern University.

Mr. Ksiazek also was a member of the Civil Right Clinic at the University of Illinois College of Law, during which time he conducted a three-day trial in the Central District of Illinois. *Id.* In the past, Courts in the Northern District of Illinois have awarded Mr. Ksiazek $215.00/hour as a first year associate, $250.00/hour as a third year associate, and $275.00/hour while a fourth year associate. *Id.*

For his work in this case, Mr. Ksiazek is seeking for $300/hour, which is just slightly over the $297.60/hour adjusted Laffey Matrix rate. *Hadnott*, 2010 WL 1499473, at *7 ("We conclude that the Laffey Matrix is 'satisfactory evidence' of the prevailing rate, so that the burden shifts to opposing counsel to show why a 'lower rate is essential'"). There is ample support for this rate as similar rates have been awarded to attorneys in the Northern District of Illinois with comparable experience. *See* Ex. S, *Warfield v. City of Chicago*, 733 F. Supp. 2d 950, 960 (N.D. Ill. 2010) (Judge Castillo awarded $295/hour to a then-seventh year lawyer[5]); *Fox ex rel. Fox v. Barnes*, Case No. 09 C 5453, 2013 WL 4401801 (N.D. Ill. Aug. 15, 2013) (Defendant agreed to and Judge Holderman granted $295 rate to fifth-year associate)[6]; *Smith v. City of Chicago, et al.*, Case No. 09-cv-4754, D.E. #229 (Judge Coleman approved $285/hour for sixth-year attorney in 2012); s*ee also Catalan*, 2009 WL 2986122, at *7 ($288/hour for then sixth-year attorney in 2009); *Robinson*, 2008 WL 4534158, at *7 (citing 2007 National Law Journal survey as evidence of eighth-year associates billing $385, $425, and $435-$510). Based upon the prevailing market rate and each of the submitted affidavits, this Court should award Mr. Ksiazek a $300/hour rate.

---

[5] Judge Castillo's comprehensive *Warfield* fee opinion approves the rates without stating the amounts, but the Joint Fee Statement from *Warfield* is attached as Exhibit O.
[6] Similar to Judge Castillo's opinion, Judge Holderman in *Fox ex. Rel. Fox.* did not reference the award of $295 because it was not disputed but the Joint Fee Statement is attached as part of Exhibit O.

### c.       Ed Fox & Associates Law Clerks

Plaintiff's counsel seeks a rate of $100/hour for work performed by law clerks in assisting with discovery and trial preparations.  The $100/hour rate sought is well below the $146.28/hour rate suggested by the adjusted Laffey Matrix and is inherently reasonable. *See* Ex. Q (Laffey Matrix).

### D.       The Lodestar Should Not Be Reduced

As outlined in the parties' Local Rule 54.3 statements attached hereto as Exhibit L, the parties disagree over the Plaintiff counsel's hourly rate, the total amount of hours sought, and whether an overall reduction is appropriate.  The Defendant's letter of opposition to Plaintiff's Fee Request, Exhibit P, is simply not a good faith or reasonable opposition to Plaintiff's hours and hourly fee request.  Defendant seeks to lower Mr. Fox and Mr. Ksiazek's rates, remove hours spent on unsuccessful matters and all law clerk hours, and reduce Plaintiff counsel's lodestar by 50%.  Defendant is seeking to lower Plaintiff counsel's lodestar not based on any notable *Hensley* factors, but rather based upon perceived deficiencies in Plaintiff's billing statements and unreasonable rate requests.  Plaintiff will address each objection below.

### 1.   Defendant's Opposition to Plaintiff's Hourly Rate Request is baseless

As outlined in the Defendant's response to Plaintiff's Attorney Fee materials, attached hereto as Exhibit P, Defendant seeks to reduce Ed Fox's hourly rate to $411.67 by arguing that by "his own admission" . . . his "hourly rate was $400 per hour."  The Defendant cites to *Blackwell v. Kalinowski et al.,* 2012 U.S. Dist. LEXIS 17443 (N.D. Ill. Feb 13, 2012), as its authority for their argument.  However, although that was the court's reference in the opinion, the Defendant fails to note that Mr. Fox's declaration in that case was filed in September 2011, that his *hourly rate to billed clients* was *then* $400.00 per hour, and that his contingent market

rate was *then* $450.00.  *See* Ex. G, a copy of Mr. Fox's declaration.  Since the time of that declaration, nearly 3 years ago, Mr. Fox's hourly rate and contingent market rate has gone up as set forth in his declaration filed and attached hereto.  *Id.*  As noted above, Judge Grady awarded Mr. Fox $510/hour as recently as this year.

Equally problematic is the Defendant's attempt to adjust downward Mr. Ksiazek's rate since its argument about this was solely based upon what the defense (wrongly) believed that Mr. Fox's rate should be.  Defendant further attempts to lower Mr. Ksiazek's rate based upon the fact that his rate should not be greater than the hourly rate that Defendant paid to two of the partners who worked on this matter.  However, it is a reasonable inference that Mr. Botana and Mr. Dishman charged the City of Chicago a substantially lowered hourly rate for their services based upon the fact that they work on many employment discrimination cases for the City of Chicago. It would be highly unusual if a partner at a medium sized law-firm such as Mr. Botana charged his private clients a rate similar to that which he charges the City of Chicago.  Regardless, what Mr. Botana and Mr. Dishman chose to charge the City of Chicago is of no value to the determination of the rate of Mr. Ksiazek's services here.

## 2.  Defendant's Other Specific Criticisms Have No Merit

The Defendant has made several other criticisms and objections to Plaintiff's counsels' billing which can be addressed generally, rather than go through a line by line recital.  As outlined above, and in Exhibit F, the Defendant's own billing for the same case exceeds Plaintiff's billing by more than a third.  The Defendant's purported hours are virtually *more than double* the hours submitted by Plaintiff's counsel.  Therefore, Defendant's nitpickings of Plaintiff's billing practices are insignificant at best.

### a. Unsuccessful Claims and Discovery

The Defendant argues that since the Plaintiff lost a partial motion to dismiss an arbitrary 30% should be deducted from the billing for the complaint and the work defending the motion to dismiss should be forfeited. The Defendant also argues Plaintiff lost a motion to compel a 30(b)(6) deposition and therefore that time should be forfeited, notwithstanding that the result was that the Defendant was ordered to respond to requests to admit. In the scheme of things, not every battle will be won litigating a long, complicated and vigorously litigated case. Given the lengthy history and the amount of motion practice that occurred, the Defendant was remarkably unsuccessful at nearly every turn.

Case law does not support the Defendant's position as it is generally inevitable that along the way to victory some battles might be lost. The Seventh Circuit has long been clear that it does not matter that Plaintiff did not win every battle along the way. *Kurowski v. Krajewski*, 848 F.2d 767 (7th Cir. 1988) ("That the lawyers spent some time in blind alleys is irrelevant; this is inevitable, and the hourly rate reflects the fact that not all time is equally productive"); *Cruz v. Cicero*, 275 F.3d 579, 593 (7th Cir. 2001); *see also Buffington v. Baltimore County*, 913 F.2d 113, 128 n.12 (4th Cir. 1990) ("Section 1988 rewards a plaintiff who ultimately prevails—who wins the war—without deducting for lost battles along the way"); *87 South Rothschild Liquor Mart, Inc. v. Kozubowski*, 775 F. Supp. 1129 (N.D. Ill. 1991) (same). Here, Plaintiff enjoyed complete success at trial and no downward departure is appropriate. If Defendant's logic were followed then its counsel should not be paid at all, since Defendant lost the trial. However, Defendant paid Jackson Lewis over $657,000 dollars to fight hard, and Jackson Lewis received compensation notwithstanding that they lost the case. Plaintiff is fairly confident that the

Defendant would not take that position that they should have to return their fees because they lost. Hence, the relatively trivial lost battles are not a basis here to lower the fees sought.

### b. Alleged Improper and Excessive Fees

The Defendant has the audacity to contend that 50% of the time should be reduced for the attorneys and 100% of the time for the law clerks should be eliminated. This is based upon alleged duplication of work, excessive time for tasks, billing for alleged administrative tasks, "block" billing, and vague billing. The absurdity of this contention is transparent for two reasons. In the first instance, as noted, the Defendant billed more than *twice as many hours as that of Plaintiff,* and second, the Defendant's specific objections are wholly without merit.

In connection with the point of vague billing, the Defendant asserts that billing based upon "discuss[ing] case/trial strategy with Jon," for 1.5 hours three separate times is vague. Ex. P, pg. 3. It is difficult to determine how much more specific time entries the Defendant requires, but suffice to say that to be more specific the Plaintiff would have to divulge work-product privileged information, which Plaintiff is required not to do. In any case, the descriptor is more than ample for the Defendant to understand, particularly since Mr. Fox did not participate in the day to day litigation of the case and had to get up to speed on the case which required discussion with Mr. Ksiazek. Further, these notations are not any different that Defendant's counsel who billed for "attend trial strategy meeting," and "prepare for and meet with trial team to discuss trial strategy". *See* Ex. F, Defendant time sheet entries at 1/24/14; *see also* "Follow up after trial" for 1.8 hours by James Botana, which is set forth nearly every trial day. Plaintiff has no idea what these time entries mean, but apparently they were a good enough of a description to use to bill the City.

Similarly, the complaint about "block" billing is mostly not accurate. Just using a semi colon in the description of the work done does not transform an item into "block" billing, and to the extent that arguably "block" billing occurred as Defendant seems to think, it has been corrected in the time sheets now being filed by Plaintiff. Further, how this is different than any of Defendant's entries is mystifying. For example, James Botana described 14.5 hours of work on February 9, 2014 as follows: "Prepare for and meet with Randy Zawis and Brian Byrne, review and revise opening and prepare cross examination outlines". Ex. F, 2/9/14 entry. With the exception of a semi-colon, this is no different than any of Plaintiff's entries. In any case, notwithstanding the Defendant's criticisms, which its lawyers themselves did not heed, Plaintiff has placed time notations on any supposed "block" billing in the time sheets that have been submitted to the court.

Further, contrary to Defendant's objections there is no unreasonable duplication of work, excessive time, or work that should have been labeled as administrative. Again, one need only look at the hours submitted by the Defendant to compare and note that Plaintiff's counsels' hours are clearly reasonable compared to that of Defense counsel. In connection with duplication of work, virtually every attorney for the Defendant worked numerous hours on the closing argument. In one instance, Neil Dishman spent 2.5 hours preparing for and meeting Sgt. Bob Flores for witness preparation. Ex. F, 1/22/14 entry. Sgt. Flores was not even a witness in the case. Hence, it is evident that the Defendant's criticisms are hollow.

### c. Arbitrary "Meat-Axe" Percentage Reductions Are Disfavored

Both the Supreme Court and Seventh Circuit case law indicate that the presumption of reasonableness attaching to a lodestar calculation of attorney's fees is a "strong" one. *Perdue v. Kenny A.*, 130 S. Ct. 1662, 1633 (2010) ("strong presumption"); *Dunning*, 62 F.3d at 872

("[Courts employ a] strong presumption that the lodestar figure—the product of reasonable hours times a reasonable rate—represents a reasonable fee," which is "wholly consistent" with the purposes of Section 1988.) (internal citations omitted). Accordingly, the Supreme Court teaches that fees may be adjusted downward only in "those *rare circumstances* in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Perdue*, 130 S. Ct. at 1633 (emphasis added); *see also Pickett v. Sheridan Health Care*, 664 F.3d 632, 640 (7th Cir. 2012) ("Despite recognizing the lodestar method as 'not perfect,' the Supreme Court recently extolled its virtues and reaffirmed its dominant role in federal fee-shifting cases.").

In light of this strong presumption, "[p]ercentage reductions of the kind the district court used are not a good way to make adjustments for partial success." *Calderon v. Witvoet*, 112 F.3d 275, 276 (7th Cir. 1997) (disapproving of a "meat-axe approach" to reducing lodestar fees). *Cf. Schlacher v. Law Offices of Phillip J. Rotche & Associates, P.C.*, 574 F.3d 852, 857 (7th Cir. 2009) ("courts may not 'eyeball' and decrease the fee by an arbitrary percentage because of a visceral reaction that the request is excessive"); *Pickett*, 664 F.3d at 644 ("We are sympathetic to the court's perception that Rossiello stands to recover an excessive amount. But once the court has determined that the rate claimed and hours spent are reasonable, the district court's supervisory authority over statutory fee awards does not permit it to reduce the lodestar to prevent the attorney from recovering a windfall."). Therefore, the Defendant's suggestion that Plaintiff's lodestar be reduced by 50%, as documented in Ex. P, should be disregarded.

**E.      Plaintiff's Expenses And Costs Are Reasonable And Should Be Approved**

In its effort to prevail for Plaintiff, Ed Fox & Associates spent $12,885.85 in expenses and costs recoverable under Section 1988 and/or Section 1920. *See* Ex. R, Bill of Costs.  The

receipts documenting these expenses and costs are included in the group exhibit, along with a summary listing each item. *Heiar v. Crawford County,* 746 F.2d 1190, 1203 (7th Cir. 1984) (holding that a reasonable attorney's fee also includes "expenses that are distinct from … statutory costs or the costs of the lawyer's time reflected in his hourly billing rates," and includes such things as postage, long-distance calls, travel, and computerized legal research); *Haroco, Inc. v. American Nat'l Bank & Trust Co.,* 38 F.3d 1429, 1440 (7th Cir. 1994).

Plaintiff further listed expenses for a copy of six deposition transcripts of witnesses who provided deposition testimony in the *Campbell v. City of Chicago* case. These six witnesses, identified above, were listed on the Defendant's witness list and called as witnesses at trial in this matter. Therefore, Plaintiff necessarily required these deposition transcripts in order to properly prepare for trial. Plaintiff did not go to trial in the *Campbell* matter, and therefore only ordered the depositions when they were required for the *Corcoran* trial. As noted, Plaintiff did not seek reimbursement for the court reporter appearance fees for witnesses noticed to appear in the *Campbell* matter. Because of the similar nature of the two cases, this Court should grant Plaintiff his costs spent necessarily obtaining deposition transcripts that were required to obtain a successful result at trial.

Exhibit N contains receipts and invoices for items that are recoverable as expenses if the Court declines to award them as distinct from costs, such as travel to and from the deposition of Randall Zawis, a hotel in San Diego, California for Zawis's deposition, cab fare to Plaintiff's deposition, and postage expenses. *See DiSorbo v. City of Schenectady*, 2004 WL 115009, at *5 (N.D.N.Y. Jan. 9, 2004) (prevailing plaintiff in civil rights case against police officers was entitled to recover as costs travel expenses incurred, such as airfare and hotel expenses); *Erickson v. City of Topeka*, 239 F. Supp. 2d 1202 (D. Kan. 2002); *Johnson v. Mortham*, 950 F.

23

Supp. 1117 (N.D. Fla. 1996). Accordingly, Plaintiff should be awarded his total amount of fees and expenses totaling $12,885.85 for the reasons stated in his bill of costs as well as based upon Plaintiff's right to be awarded expenses as a prevailing party.

### III.     <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff requests that this Court grant his Petition for Fees and Bill of Costs and award Plaintiff's counsel fees and costs in the total amount of $459,284.85, consisting of $446,399.00 in attorney's fees and $12,885.85 in costs and expenses.

Respectfully Submitted,

<u>s/ Jonathan R. Ksiazek</u>
Jonathan R. Ksiazek
ED FOX & ASSOCIATES
300 West Adams, Suite 330
Chicago, Illinois 60606
(312) 345-8877

**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

BRIAN CORCORAN,                          )
                                         )
      Plaintiff,                     )
                                         )
vs.                                      )          Case No. 10-cv-6825
                                         )
THE CITY OF CHICAGO,                     )          Judge Andrea R. Wood
                                         )
      Defendant.                     )

**<u>NOTICE OF FILING</u>**

To:     James F. Botana
          Neil H. Dishman
          Paul J. Stroka
          Stephanie E. Shirley
          JACKSON LEWIS, P.C.
          150 N. Michigan Avenue, Suite 2500
          Chicago, IL 60601

      PLEASE TAKE NOTICE that on June 10, 2014, the undersigned filed with the Clerk of this Court, **PLAINTIFF'S PETITION FOR ATTORNEYS' FEES AND COSTS**, service of which is being made upon you**.**

                                  s/Jonathan R. Ksiazek        
                                  Jonathan R. Ksiazek
                                  ED FOX & ASSOCIATES
                                  300 West Adams, Suite 330
                                  Chicago, IL 60606
                                  (312) 345-8877

**<u>PROOF OF SERVICE</u>**

      I, Jonathan R. Ksiazek, an attorney, under penalty of perjury, and state that on June 10, 2014, service is being made in accordance with the General Order on Electronic Case Filing section XI.

                                  s/Jonathan R. Ksiazek
                                  Jonathan R. Ksiazek