**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **BRIAN CORCORAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:10-cv-06825** |
| | ) | |
| **THE CITY OF CHICAGO,** | ) | **Judge Andrea Wood** |
| | ) | |
| **Defendant.** | ) | |

## DEFENDANT'S RESPONSE TO PLAINTIFF'S PETITION FOR ATTORNEY'S FEES

### I.     INTRODUCTION

Plaintiff Brian Corcoran, a police officer employed by Defendant City of Chicago (the "City"), brought this suit alleging two causes of action: (1) retaliation in violation of Title VII of the Civil Rights Act of 1964; and (2) intentional infliction of emotional distress ("IIED"). Following a jury trial on Corcoran's retaliation claim – his IIED claim was dismissed prior to trial – judgment was entered in Corcoran's favor, and he was awarded $134,000 in compensatory damages and $300 in lost wages. Corcoran's counsel, Ed Fox and Jonathan Ksiazek of Ed Fox & Associates (collectively "Corcoran's counsel"), have now filed a Petition for Attorney's Fees ("Petition" – D.E. #205) in which they seek a fee award of $446,399.00. The amount requested is excessive, and the Petition is both legally and factually flawed.

More specifically, Corcoran's counsel's request for fees is defective in at least two, and potentially three, major ways. First, Corcoran's counsel seeks to recover for numerous hours that were not reasonably expended on the litigation. Second, Corcoran's counsel's claimed hourly rates are unreasonably high. Once these factors are corrected, the "lodestar" for the

1

requested fees should be set at $118,588.29. Third, depending on the outcome of the City's post-trial motions, a further reduction to the lodestar may be warranted due to limited success.

## II.    LEGAL STANDARD

The first step to determining a reasonable fee is calculating the lodestar by multiplying "the number of hours reasonably expended on the litigation" by "a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Next, the court may adjust the lodestar in light of various factors, *see id.* at 430 n. 3, with "the most critical factor" being "the degree of success obtained," *id.* at 436. This method of determining fees is appropriate in Title VII cases. *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 639 n. 1 (7th Cir. 2011).

## III.    ARGUMENT

### A.    HOURS NOT REASONABLY EXPENDED

Corcoran's counsel believes that their claimed time of 1,321.65 hours is reasonable for two reasons. First, they claim their hours expended are reasonable because their total billable hours are less than the total hours the City's attorneys have billed to date. Second, they argue their time is presumptively reasonable because the City never offered any money to settle this matter. These arguments are specious and ignore that the Petition reveals three major categories of excessive, redundant, or otherwise unnecessary time and expenses: (1) time spent on unsuccessful claims and discovery; (2) improper and excessive time; and (3) time that is otherwise premature. Indeed, "[i]n calculating the lodestar amount, a court must first eliminate all hours claimed that are either not reasonably expended or inadequately explained." *O'Sullivan v. City of Chicago*, 484 F. Supp. 2d 829, 834 (N.D. Ill. 2007) (Cole, M.J.) (internal quotes omitted). As detailed below, the Court should exclude this time from the lodestar.[1]

---

[1]     Under *Hensley*, Corcoran's counsel was required to assist the Court by "mak[ing] a good faith effort to exclude from [their] fee request hours that are excessive, redundant, or otherwise unnecessary." 461 U.S. at 434.

1.    *Corcoran's Counsel's Arguments in Support of Their Claimed Hours Are Meritless*

Corcoran cites to *Chicago Professional Sports Ltd. v. National Basketball Association*, 1996 U.S. Dist. LEXIS 1525 * 9 (N.D. Ill. Feb. 13, 1996) (Holderman, J.)[2] for the proposition that the City's hours expended are the best comparable standard to measure the reasonableness of Corcoran's hours expended. (Petition at 7-8.) That case, however, does not stand for that proposition. Rather, the court stated that due to the complexity and length of the antitrust litigation at issue, which "involve[ed] both unique facts and novel questions of law," "the defendant's fees may provide the best available comparable standard to measure the reasonableness of plaintiff's expenditures in litigating the issues of the case." *Chicago Professional Sports Ltd.*, 1996 U.S. Dist. LEXIS 1525 at *9. Therefore, the court compelled the NBA to respond to discovery regarding its expended fees and costs. *Id.* Here, by contrast, the parties litigated a straightforward and unremarkable Title VII retaliation claim, making *Chicago Professional Sports Ltd.* distinguishable.[3]

Further, Corcoran's Petition criticizes the City for staffing the case with five lawyers and three paralegals over the four years of litigating this matter. (Petition at 8.) Corcoran's counsel make this argument despite knowing that the lead associate handling this matter for the City was on maternity leave for the three months prior to trial, returning only one week before trial began. Therefore, the City had no other choice than to staff this matter with additional attorneys.

---

Unfortunately, Corcoran's counsel made no attempt to do so. In the parties' meet-and-confer process under Local Rule 54.3, Corcoran's counsel's original position was that every one of their hours expended was reasonable and should be compensated. After the City sent opposing counsel a letter describing many categories of hours that should be excluded from the lodestar, they responded by offering no reduction to their hours whatsoever. They continue to maintain that they are entitled to reimbursement for 100% of their time spent on this case.

[2]    All unpublished opinions are attached hereto as Exhibit N.

[3]    Corcoran's counsel relies solely on adjectives to insinuate that this was something more than a run-of-the-mill Title VII case, for example describing the verdict as "remarkable" and "groundbreaking." (Petition at 1, 2.) This hyperbole finds no support in the record.

More generally, Corcoran's counsel makes the arguments above in order to distract from their failure to meet their burden of proof in the Petition. The question before the Court is not whether Corcoran's counsel spent more or less time on the case than the City's counsel; the question is whether the specific time entries for which they seek reimbursement were reasonably expended. As demonstrated in the sections that follow, many of them were not reasonably expended – thus, it is no wonder that Corcoran wishes to focus attention away from them.

Finally, Corcoran's counsel claims their fees are reasonable because the City never made a settlement offer. (Petition at 8-9.) The history of the parties' settlement discussions undercuts this argument, however, as Corcoran's settlement demands were always unreasonable. Here, Corcoran's final settlement demand just prior to trial was for $250,000 – nearly double the $134,300 that he was awarded at trial. In other words, the City's decision to try the case rather than make a settlement offer was a rational response to Corcoran's unreasonable demands. Therefore, the settlement discussions between the parties are irrelevant to the reasonableness of Corcoran's counsel's claimed hours.

### 2. *Unsuccessful Claims & Discovery*

Putting the above red herrings to the side, Corcoran's counsel is required to demonstrate that the hours for which they seek reimbursement were reasonably expended on the case. As discussed in this section and the one that follows, many of Corcoran's counsel's time entries fail to meet this standard.

Initially, Corcoran filed a two-count complaint alleging: (1) that he was retaliated against in violation of Title VII of the Civil Rights Act of 1964; and (2) that he was subjected to intentional infliction of emotional distress ("IIED") based on the same conduct. The City then filed a successful motion to dismiss Corcoran's claim for IIED. (*See* D.E. #26.) Therefore, the

time spent on drafting that portion of the complaint and defending against the City's motion to dismiss was not reasonably expended and should not be included in the lodestar.

Contrary to Corcoran's assertion, case law does support this reduction. *Hensley* says that the court should subtract time for *losing claims*, but a losing argument in support of a successful claim for relief is fully compensable time. *Hensley*, 461 at 434. *Lenard v. Argento*, 808 F.2d 1242 (7th Cir. 1987). Corcoran's suit was *not* 100% successful – he prevailed on only one of the two original counts filed in his complaint. Therefore, all of Corcoran's counsel's time in defending against the motion to dismiss should be excluded, as well as any time spent in drafting that portion of the complaint. Because it is impossible to discern from Corcoran's counsel's time records the exact amount of time spent on drafting the IIED claim, the City requests an overall 30% reduction in the amount of time Corcoran's counsel spent in drafting the complaint.

Similarly, Corcoran's counsel served a baseless, eleventh-hour request for a 30(b)(6) deposition on a multitude of topics, which also led to Corcoran's counsel filing a motion to compel that deposition based on the City's refusal to produce any witnesses in response to the sweeping and unjustified request. (*See* D.E. #32.) The 30(b)(6) deposition notice was served on October 1, 2011, after Corcoran's counsel objected to the City's first request for an extension of the then-current discovery deadline of October 4, 2011. In other words, had the City's requested extension been denied or had it never requested an extension, Corcoran's counsel never would have served the notice in the first instance. Further, the Court agreed that Corcoran's counsel's request was improper, and thus it denied the motion. (*See* D.E. # 34.) Eventually, the Court agreed that Plaintiff could serve no more than ten (10) requests to admit on the City (although they were untimely), which would accomplish the discovery Corcoran's counsel sought through the requested 30(b)(6) deposition. (*Id.*) Therefore, the time spent on the 30(b)(6) deposition

notice, as well as on the motion to compel should be excluded as it was unjustified and unnecessarily contentious. *Hensley*, 461 U.S. at 434; *see also, e.g., Luciano v. Olsten Corp.*, 109 F.3d 111, 117 (2d Cir. 1997) ("it was proper for the district court to exclude excessive hours . . . counsel expended on the action because of unnecessary contentious conduct"); *Johnson v. Big Lots Stores, Inc.*, 639 F. Supp. 2d 696, 703-04 (E.D. La. 2009) (excluding hours spent on unsuccessful motions).

Finally, Ksiazek lists 3.50 hours of excessive time for a "potential sur-reply" that was never filed, which must be excluded. (*See* Exhibit A.)

In sum, the hours described above are all "excessive, redundant, or otherwise unnecessary," and thus must be excluded. The following chart provides a summary of the hours that should be excluded as described above.

| Date | Biller | Description | Hours |
|---|---|---|---|
| **Time Spent on Drafting Complaint** | | | |
| 09/20/10 | Ksiazek | Research sample civil complaints alleging retaliation claims against police departments | 1.50 |
| 09/21/10 | Ksiazek | Conference with client discussing status of complaint and factual details in complaint | 1.0 |
| 09/21/10 | Ksiazek | Prepare initial draft of complaint | 3.50 |
| 09/22/10 | Ksiazek | Edit and revise draft of complaint | 2.50 |
| 09/24/10 | Ksiazek | Meet with co-counsel to discuss complaint draft and potential changes to draft of complaint | 1.0 |
| 09/27/10 | Ksiazek | Edit and revise draft of complaint based upon discussions with co-counsel | 1.0 |
| 09/28/10 | Ksiazek | Conduct research on protected activities and adverse employment actions under Title VII; conduct research on police department retaliation and sample complaints brought in similar factual situations | 3.0 |
| 10/08/10 | Ksiazek | Finalize draft of complaint based upon Title VII research; review and edit final draft of complaint | 1.0 |
| 09/24/10 | Fox | Review draft of complaint with Jon | 1.0 |
| **Total** | | | 4.65 – 30% of total |

| Time Spent on the City's Motion to Dismiss | | | |
|---|---|---|---|
| 01/28/11 | Ksiazek | Read and review Defendant's answer and Motion to dismiss | 1.0 |
| 02/21/11 | Ksiazek | Conduct research on legal issues raised in Defendant's Motion to Dismiss | 1.0 |
| 02/22/11 | Ksiazek | Draft response to Defendant's Motion to Dismiss; conduct research on legal issues raised in Defendant's Motion to Dismiss | 3.50 |
| 02/23/11 | Ksiazek | Edit and revise response to Defendant's Motion to dismiss; conduct research on legal issues raised in Defendant's Motion to Dismiss | 5.0 |
| 02/24/11 | Ksiazek | Edit and revise response to Defendant's Motion to Dismiss; conduct research on legal issues raised in Defendant's Motion to Dismiss; meet with co-counsel to discuss response to Defendant's Motion to Dismiss | 6.50 |
| **Total** | | | **17** |
| Time Spent on Unnecessary Notice of Rule 30(b)(6) Deposition | | | |
| 10/06/11 | Ksiazek | Prepare notice of Rule 30(b)(6) deposition (.5); conference with co-counsel regarding notice (.5) | 1.0 |
| 10/17/11 | Ksiazek | Conference with opposing counsel regarding potential Rule 30(b)(6) depositions | .50 |
| 10/17/11 | Ksiazek | Prepare response letter to Defendant's response to Rule 30(b)(6) deposition notice | 1.50 |
| 10/24/11 | Ksiazek | Draft motion to compel 30(b)(6) deposition | 4.0 |
| 10/24/11 | Ksiazek | Conduct research on motion to compel and quotas in Illinois and Seventh circuit; Review deposition testimony relating to quotas in support of Motion to Compel | 1.50 |
| 10/26/11 | Ksiazek | Review motion to compel to prepare for hearing; review Defendant's supplemental production of documents | 1.0 |
| 10/27/11 | Ksiazek | Prepare for and attend hearing on Motion to Compel Rule 30(b)(6) deposition | 1.50 |
| 10/27/11 | Ksiazek | Conference with client discussing motion to compel hearing | .50 |
| 10/28/11 | Ksiazek | Conference with co-counsel discussing requests to admit | 1.0 |
| 10/31/11 | Ksiazek | Edit and revise requests to admit to Defendant | 2.50 |
| 11/01/11 | Ksiazek | Review case law regarding timing of response to Requests to Admit | 1.0 |
| 11/07/11 | Ksiazek | Prepare and read multiple e-mails with opposing counsel regarding potential for settlement and requests to admit to Defendant | 2.0 |
| 11/08/11 | Ksiazek | Prepare for and attend status hearing and hearing on requests to admit and motion for summary judgment briefing | 1.0 |
| 10/28/11 | Fox | Meet with Jon to discuss requests to admit; review draft of requests to admit | 1.0 |
| **Total** | | | **20** |
| Time Spent on Unfiled Motions | | | |
| 03/27/12 | Ksiazek | Conference with co-counsel discussing reply briefs on Motion for Summary Judgment and potential for sur-reply brief | 1.0 |

| 03/28/12 | Ksiazek | Conduct research on supplemental law for potential sur-reply briefs | 1.0 |
|----------|---------|---------------------------------------------------------------------|-----|
| 03/30/12 | Ksiazek | Conduct research on supplemental law for potential sur-reply briefs | 1.50 |
| **Total** | | | **3.5** |
| **Total Excluded Time for Ksiazek** | | | **44.15 hours** |
| **Total Excluded Time for Fox** | | | **1.3 hours** |

### 3. Improper and Excessive Time Entries

A review of Corcoran's counsel's claimed expended hours reveals a host of errors, including that several entries are not only excessive, but they also fail to provide adequate descriptions of the work performed. Part of the Court's analysis in determining the lodestar is whether the claimed hours were reasonably expended. "An hour reasonably expended is an hour that is not excessive, redundant or otherwise unnecessary." *Williams v. Z.D. Masonry Corp.,* 2009 U.S. Dist. LEXIS 11554 *1 (N.D. Ill. Feb. 17, 2009). Where a party has "failed to exclude or otherwise tailor unreasonable time entries, the district court may reduce the number of hours accordingly." *Lizak v. Great Masonry,* 2010 U.S. Dist. LEXIS 76568, at *4 (N.D. Ill. July 29, 2010). The Court may also reduce the number of hours where the description of the work performed is inadequate. *Lopez v. City of Chicago,* 2007 U.S. Dist. LEXIS 85708, at *5 (N.D. Ill. Nov. 20, 2007). The City addresses all of the deficiencies in each attorney's time records below.

### a. Ksiazek's Time Records

As an initial matter, certain tasks performed by Ksiazek were clerical or paralegal in nature and should not be billed at attorney rates. For example, on October 8, 2010, Ksiazek billed .50 hours for filing Corcoran's complaint via the Court's electronic filing system and conducting research on the assigned judge. (*See* Exhibit A.) "Courts have found organizing file folders, preparing documents, copying documents, assembling filings, electronically filing

8

documents, sending materials, docketing or 'logging' case events into an internal case tracking system, and telephoning court reporters to be clerical." *Delgado v. Village of Rosemont,* 2006 U.S. Dist. LEXIS 80284, at *2 (N.D. Ill. Oct. 31, 2006); *see also Goodale v. George S. May Int'l Co.,* 2010 U.S. Dist. LEXIS 71132, at *4 (N.D. Ill. July 14, 2010). Therefore, any entry for clerical work must be disallowed, including any work that should have been delegated to a paralegal or administrative assistant. *See, e.g., Jablonski v. Astrue,* 2011 U.S. Dist. LEXIS 22360 *2 (N.D. Ill. Mar. 3, 2011) (finding that it is appropriate for attorney to delegate drafting certain pleadings such as attorney appearances, summonses and civil cover sheets to legal assistant); *Goodale,* 2010 U.S. Dist. LEXIS 71132, at *4 (disallowing time attorney spent on paralegal work such as emails confirming information with clients, emailing and receiving documents, downloading and uploading filings). The chart attached hereto as Exhibit M identifies all entries that, in whole or in part, contain clerical work performed by Ksiazek that should be excluded. That time totals 14.75 hours, which should be excluded from the lodestar calculation.

Further, many of Ksiazek's time records are excessive, so much so that it appears he rounded to the nearest half hour for every task performed. Indeed, virtually all of Ksiazek's time records appear in half-hour increments.[4] For instance, for nearly every telephone conference or email exchange Ksiazek had with one of the City's attorneys, he billed no less than .50 hours. As just one example, on June 17, 2011, for the same telephone conversation, Stephanie Shirley billed a .20 (or 12 minutes) where Ksiazek billed .5 (a full half hour) of time, or eighteen minutes longer than the actual length of the conversation. (*See* Exhibit B.) Ksiazek has substantially

---

[4]     Ksiazek's initial time records all appear in half-hour increments. (*See* Exhibit C.) Only after the City stated its objections to his time entries did Ksiazek modify some of his entries, particularly the ones identified as block-billed, to include quarter-hour increments. This *post hoc* revision does not remedy the initial problem, which is that he appears to have rounded even brief tasks up to half-hour increments at the time he made the entries.

overbilled for his time and to account for his inflationary billing, his hours should be reduced by an overall 40%. *See Parts & Electric Motors, Inc. v. Sterling Electric, Inc.*, 123 F.R.D. 584, 587 (N.D. Ill. 1988) (reducing lead attorney's hours due to billing in half-hour increments); *see, e.g., Thompson v. Guzman*, 2011 U.S. Dist. LEXIS 80285 *7 (N.D. Ill. Feb. 14, 2011); *Entertainment Software Ass'n v. Blagojevich*, 2006 U.S. Dist. LEXIS 93638 *9 (N.D. Ill. Aug. 9, 2006) ("[w]hen a fee petition is vague or inadequately documented, a district court may either strike the problematic entries or (in recognition of the impracticalities of requiring courts to do an item-by-item accounting) reduce the proposed fee by a reasonable percentage"); *Tomazzoli v. Sheedy*, 804 F.2d 93, 98 (7th Cir. 1986) ("it is generally unrealistic to expect a trial court to evaluate and rule on every entry" and it is within a district court's discretion simply to lop off a percentage of the hours requested "as a practical means of trimming fat from a fee application.").

Several of Ksiazek's time entries are also redundant and reveal duplicative work for the same task. (*See* Exhibit M.) As detailed in the chart found in Exhibit M attached hereto, an additional 4.5 hours should thus be reduced from the lodestar calculation.

Finally, twenty-one more hours should be reduced from Ksiazek's time entries because they are for "anticipated future work" in this case. (*See* Exhibit A.) These are hours that have not been "reasonably expended" in this litigation and are, therefore, not recoverable. *Hensley*, 461 U.S. at 434; *see also, e.g., Luciano*, 109 F.3d at 117.

Based on the deficiencies described above, Corcoran should only be able to recover for 427.86 of Ksiazek's hours. (797.50 claimed hours – 44.15 hours for time spent on unsuccessful claims or discovery – 14.75 hours for clerical work – 4.5 hours for duplicative/redundant work – 21 hours for future/anticipated work = 713.1 – 285.24 (an additional 40% for over-billing to the nearest half-hour) = 427.86 hours).

### b. Fox's Time Records

Fox's time entries suffer from several of the same deficiencies as Ksiazek's. Fox appears to have accounted for his time in quarter-hour increments, or on occasion half-hour increments. (*See* Exhibit D.) As described above, this practice results in over-billing. To account for the waste in Fox's time due to excessive billing, Fox's claimed time should be reduced by a similar overall 30%.

In addition to an overall reduction, Fox's claimed hours should be further reduced because several of his entries are redundant and/or vague. *See Sughayyer v. City of Chicago*, 2012 U.S. Dist. LEXIS 85384 * 21-22 (N.D. Ill. Jun. 20, 2012) (concluding that time entries such as "research re fee petition" or words to that effect are vague and a reduction in time for such entries is appropriate). His time entries also reveal duplicate work for the same task, as well as block billing. Although block billing is not entirely prohibited, courts in this district have reduced fee awards or even barred recovery on block-billed time. *See e.g., Gibson v. City of Chicago*, 873 F. Supp. 2d 975, 987 (N.D. Ill. 2012); *Reyes v. Nations Title Agency of Illinois, Inc.*, 2001 U.S. Dist. LEXIS 8446, at *1 (N.D. Ill. June 19, 2001). Here, Fox's block-billed time should be reduced from the fee award because his entries are so cryptic that the City and the Court are prohibited from being able to determine whether the hours expended were reasonable and necessary to the conduct of the litigation. *See* Exhibit K.

Fox claims that the City's objections to his time records are unwarranted because the City's bills contain several of the same errors that are also found in his time records. (Petition at 20.) That, however, does not cure the deficiencies in Fox's time records, nor does Corcoran's counsel cite any case law to support that contention. Fox is the one seeking to force an adversary to pay for his fees, and it is his time records that are at issue. Attached hereto as Exhibit K is a

chart summarizing the City's objections to Fox's time records and explaining why 196.75 hours should be excluded from the lodestar calculation.

Finally, an additional seventeen hours should be reduced after subtracting out the above hours because they are for "anticipated work" and thus have yet to be "expended" in this litigation. (*See* Exhibit D.) Therefore, Corcoran should be able to recover for only 113.645 hours of Fox's requested time. (377.40 claimed hours – 1.3 hours for time spent on unsuccessful claims or discovery – 196.75 hours for block-billed/vague/duplicative work – 17 hours for future/anticipated work = 162.35 – 48.705 (an additional 30% for over-billing to the nearest quarter-hour or half-hour) = 113.645.)

### c. Law Clerk's Time Records

Finally, Corcoran should not be able to recover for any of the law clerk's claimed time, as it is not only excessive, but it is also for tasks that were not completed in connection with this case. For example, fourteen out of the twenty entries were for summarizing depositions taken in Officer Campbell's case, not Corcoran's case. Although the parties used discovery materials from each case in the other case, Corcoran's counsel can only recover here for its work on Corcoran's case. To allow otherwise would create the possibility of a double recovery in any fee petition, or settlement including attorney fees, in Campbell's case.

Similarly, the law clerk's time is greatly excessive and duplicative. For example, the law clerk billed over six hours to summarize Sergeant Schumann's deposition transcript, which consisted of less than 100 pages. In comparison, it only took the law clerk one hour to summarize Paul Mack's deposition transcript, which was also less than 100 pages. In another example, the law clerk has six separate time entries for summarizing Corcoran's deposition, consisting of over eighteen hours of time. Clearly, such work is duplicative and excessive.

In sum, for the foregoing reasons, Corcoran should not be able to recover for any of the law clerk's requested time.

### 4. Corcoran's Counsel's Request for Reimbursement of Time Incurred Post-Verdict is Premature.

Corcoran's counsel has prematurely inserted a supplemental request for over 100 hours of work performed in connection with litigating their entitlement to fees and costs, as well as for their work performed in connection with defending the City's post-trial motions (for judgment as a matter of law and for remittitur, D.E. #168-173). By inserting that request in their Petition, Corcoran's counsel has improperly attempted to: (a) deprive the City and this Court of critical information for assessing the reasonableness of the lodestar for the supplemental request – namely Corcoran's degree of success on the City's post-trial motions, as well as his Petition and Bill of Costs ("Bill"); and (b) bypass this Court's Local Rule regarding fee motions.

It is well-established that the principles of *Hensley,* including those pertaining to possible lodestar reduction, apply to fee requests for litigating fee awards ("fees on fees"). *Spellan v. Bd. of Educ. for Dist. 111,* 69 F.3d 828, 829 (7th Cir. 1995); *In re Burlington N., Inc., Employment Practices Litigation,* 832 F.2d 430, 431, 434 (7th Cir. 1987) (hereinafter "*Burlington*") (agreeing with the district court that "[a]ny other conclusion would be illogical"). The standard for evaluating and awarding a request for fees on fees is whether the movant is the prevailing party with regard to the underlying fee petition. *Muscare v. Quinn,* 680 F.2d 42, 44 (7th Cir. 1982); *see also Burlington,* 832 F.2d at 434 n. 10 (agreeing that "to allow a fee petition, which considers the degree of success on the merits, and then reimburse the petitioning party without regard to the extent of success on that original petition for fees, is contrary to the spirit of the Fees Act. In this regard, inability to apply *Hensley* would deprive the district court of the means to deal with unmeritorious counsel fee claims.") (internal quotation marks omitted). Indeed, the Court may

exercise its discretion and refuse to award further compensation where "the fee claims are exorbitant or the time devoted to presenting them is unnecessarily high." *Muscare*, 680 F.2d at 45 (internal citations omitted); *Sughayyer v. City of Chicago*, 2012 U.S. Dist. LEXIS 85384, at * 21-22 (N.D. Ill. Jun. 20, 2012) (concluding that 103 hours for work performed in connection with a fee petition and bill of costs was "excessive").

Here, it is impossible to apply all of the *Hensley* principles to Corcoran's counsel's request for reimbursement for an additional 100 hours of work performed in connection with post-verdict work, including the critical possibility of a downward lodestar adjustment based on "the degree of success obtained," because the Court has yet to rule on the City's post-trial motions, Corcoran's Petition or his Bill. Therefore, the request is fatally premature – it predates the Court's opinions on the City's post-trial motions, the Petition and the Bill – and, thus, runs afoul of *Hensley* and the spirit of fee-shifting statutes.

Moreover, depriving the City of the chance to assess Corcoran's degree of success on any post-verdict work prior to responding to Corcoran's counsel's supplemental request would be prejudicial to the City. First, Corcoran should not be able to seek any compensation for work performed in connection with defending the City's post-trial motions should the City prevail on either its Motion for Remittitur or its Motion for Judgment as a Matter of Law. Next, the City has made several arguments herein as to why Corcoran's counsel's fee award should be substantially reduced. If the Court ultimately agrees with the City on many or all of these points, the degree of Corcoran's success in his original Petition would inarguably be quite limited. The City would then naturally object to the supplemental request on these grounds and request that the Court dramatically reduce, if not disallow, any supplemental award.[5] *Hensley,*

---

[5]      *See, e.g., Burlington*, 832 F.2d at 435-436 (lead counsel obtained 42% of fees sought; in subsequent proceedings for fees incurred in litigating the initial fee award the district court did not abuse its discretion by

461 U.S. at 436.

Finally, even if Corcoran's counsel supplemental request was not otherwise improper, the Court should strike it for failure to follow the Local Rules. L.R. 54.3(d) mandates that the parties "confer and attempt in good faith to agree on the amount of fees or related nontaxable expenses that should be awarded prior to filing a fee motion" and provides a specific process and timeline.[6] In addition, L.R. 54.3(e) requires that a joint statement of any matters that "remain in dispute" be submitted to the Court with a fee petition.

Corcoran's counsel simply ignored L.R. 54.3 here with regard to any time incurred after March 14, 2014 for Fox and any time entered after March 3, 2014 for Ksiazek. (*Compare* Exhibit A with Exhibit C and Exhibit D and Exhibit L.) Thus, rather than learning of Corcoran's counsel's planned supplemental request far in advance of a motion for an award and having the opportunity to confer with them over clearly objectionable entries, the City was ambushed with that request in Corcoran's Petition. Compliance with L.R. 54.3 is not optional.

Based on these principles, the Court should exclude an additional 41.4 hours of Fox's time and 73.5 hours of Ksiazek's time from the lodestar calculation as premature.

---

reducing the lodestar by 35%); *Bretford Mfg., Inc. v. Smith Sys. Mfg. Co.*, 421 F. Supp. 2d 1117, 1129 (N.D. Ill. 2006) (court awarded 40% of fees and costs sought for underlying litigation; in subsequent fee and cost proceedings for fees and costs incurred in obtaining award, court awarded 60% of request adjusted to exclude clerical work, noting that "[n]o exact figure [was] obtainable"); *Simpson v. Sheahan*, No. 94 C 5375, 1996 U.S. Dist. LEXIS 7014, at *1-2, 10-11 (N.D. Ill. May 23, 1996) (court awarded approximately 34% of fees and costs sought for underlying litigation; in subsequent fee and cost proceedings for fees and costs incurred in obtaining fee award, court awarded approximately 28% of supplemental fee request); *Lippo v. Mobil Oil Corp.*, 692 F. Supp. 826, 837 (N.D. Ill. 1988) (disallowing plaintiff's claim for fees incurred in seeking fees because plaintiff was not a "prevailing party" for those purposes).

[6]    The City assumes that the Court would rule that L.R. 54.3 applies to any supplemental request for fees on fees. It falls within the Rule's definition of "Fee motion" – "a motion, complaint or any other pleading seeking only an award of attorney's fees and related nontaxable expenses." L.R. 54.3(a)(1). Further, L.R. 54.3 does not state that its reach is limited to initial fee motions, and its logic would apply equally to subsequent fee motions. However, the Rule bases the timing for the filing of a fee motion on the date of "the entry of the judgment or settlement agreement on which the motion is founded" – in other words, the date a party potentially becomes entitled to attorneys' fees. L.R. 54.3(b). In this case, the City assumes "the judgment" within the meaning of the Rule would be the Court's Orders on the Petition and Bill of Costs.

5. *Total Claimed Hours*

In sum, based on the foregoing deficiencies in Corcoran's counsel's billing records described above, Corcoran should only be allowed to recover for 426.605 hours (72.245 hours for Fox and 354.36 hours for Ksiazek) out of his attorneys' 1,321.65 claimed hours

6. *Improper Expenses*

Corcoran's counsel seeks to recover $12,885.85 in expenses and costs. Those are the same expenses that Corcoran seeks to recover in his Bill of Costs. (*See* D.E. #179.) For the same reasons stated in the City's Objections to Corcoran's Bill, Corcoran's request should be denied in its entirety because he failed to identify how any of the claimed expenses were necessarily incurred in this matter. Even if he had, Corcoran's Bill still warrants a substantial reduction to no more than $2,716.71 because most of his requested costs are specifically objectionable. (*See* D.E. #194.)

**B.     CORCORAN'S COUNSEL'S CLAIMED RATES ARE UNREASONABLE**

In addition to the many unreasonably-expended hours sought, Fox and Ksiazek also claim unreasonably high hourly rates of $510 and $300, respectively. Courts "have consistently looked to the marketplace as [their] guide to what [hourly rate] is 'reasonable.'" *Mo v. Jenkins*, 491 U.S. 274, 285 (1989). "[T]he burden is on the fee applicant to produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n. 11 (1984). Both Fox and Ksiazek fail to meet this burden, and their rates should be reduced accordingly.

16

*1.  Prevailing Market Rates*

In support of their claimed rates, Corcoran's counsel points to two cases where the City "agreed" to particular rates for specific attorneys – *O'Sullivan v. City of Chicago*, 484 F.Supp.2d 829 (N.D. Ill. 2007), and *Gibson v. City of Chicago*, 873 F.Supp.2d 975 (N.D. Ill. 2012). (Petition at 10-11.)  In *O'Sullivan*, the City agreed to an hourly rate of $450.00 for Elizabeth Hubbard, an attorney with at least thirty-three years of experience at that time and extensive expertise in employment law.  In the same case, the City agreed to an hourly rate of $335.00 for Elisabeth Schoenberger, an attorney with nine years of experience.  Those rates do not support Corcoran's counsel's claimed rates.  First, Hubbard, an attorney with significantly more experience than Fox, was awarded substantially *less* than the $510.00 he is requesting here. Second, Schoenberger had at least three more years of experience than Ksiazek does.  Corcoran's counsel has not provided any evidence that their experience and background are comparable to that of Hubbard or Schoenberger.   Therefore, *O'Sullivan* is not instructive.

*Gibson* is equally unhelpful to Corcoran's counsel.  Corcoran's counsel points to this case because an attorney with twelve years' less experience than Fox was awarded $395.00 per hour. (Petition at 11.)  In *Gibson*, the court concluded that a rate of $395 per hour was reasonable because the attorney had received an award of $325 per hour approximately four years prior, justifying a 11% increase. *Gibson*, 873 F.Supp.2d at 984.  Applying that rationale here, Fox, by his own admission, stated in a recent case in 2012 that his hourly rate was $400 per hour. *See Blackwell v. Kalinowski et al.*, 2012 U.S. Dist. LEXIS 17443 * 12 (N.D. Ill. Feb. 13, 2012), Exhibit D.  Only two years later, Fox now seeks a $110 increase, or 28%, which is unwarranted.

*Gibson*, 873 F.Supp.2d at 984-85.   In sum, the rationale applied in *Gibson* supports a reduction in Fox's claimed hourly rate.

Corcoran's counsel also points to consumer-law cases as evidence of their market rates. Corcoran's counsel provides no evidence of how market rates for consumer-law cases compare with rates for employment cases.   None of these awards are reliable evidence of what Corcoran's counsel's rate should be here.   *See Sidell v. Maram*, Case No. 05-cv-1001, 2010 U.S. Dist. LEXIS 34925, at *11-12 (C.D. Ill. April 6, 2010) (evidence of rates charged in a specific practice area is most "telling," particularly in a "highly specialized area" like litigation under the Americans With Disabilities Act).   Therefore, that evidence should be disregarded.

Finally, the Court should also ignore Corcoran's counsel's invocation of the Laffey Matrix.   The Seventh Circuit has declined to take a position on the Laffey Matrix's usefulness, but a number of circuit and district courts (although not all) have rightly held that it is "unpersuasive" and worthy of "little weight," not least because it purports to be a survey of rates in the Washington, D.C. area rather than Chicago.   *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 649-51 (7th Cir. 2011) (collecting cases).

### 2. *Fox's Rate*

The evidence Fox submits in support of his claimed rate is equally unpersuasive and further supports a reduction in his rate.   Fox first submits his own affidavit, which outlines his experience and provides examples of awards he received in the past.   (*See* Corcoran's Exhibit C.) With regard to the past fee awards, Fox does not explain what area of law the matters were in, what the stakes were in those matters, or provide any other context that would demonstrate that he is entitled to receive $510 per hour for his work performed in *this case*.[7]   (*Id.* at ¶ 8-9.)

---

[7]     The same holds true for Fox's attempt to compare this case to *Jones v. Clark*, 07-cv-461, and *Hale v. City of Chicago*, 09-cv-04918.   Based on the dockets from those cases, it appears that the attorney's fees issues were

Indeed, Fox's affidavit actually conflicts with his request for $510 per hour, as he states "I am currently billing clients at $400 and above per hour (depending on the type of case) in cases in which I bill hourly rates . . . ." (*Id.* at ¶ 9.) It is illogical for Fox to now claim that he is entitled to a more than $100 increase in his rate in this litigation, when he actually charges his clients much less in other cases, and where he does not explain what other types of cases he handles or which types of cases bill at which rates.

Fox next submits an order from another case where he was awarded $510 per hour from Judge Grady in connection with a wage-hour collective action. (*Id.*) That case, however, fails to provide useful or reliable evidence for what rate he should earn here. A review of the docket indicates that the defendants were defaulted (*see* Exhibit E hereto) – which, presumably, means Fox's claimed rate went unchallenged. The City should not be subjected to an inflated rate in this case on the sole basis that a defendant in another case failed to appear or to challenge a similarly inflated rate. Further, that case involved wage and hour laws, a different and highly complex area of employment law, and thus it sheds little light on the appropriate rate here. (*Id.*)

Fox also provides an affidavit from Paul Strauss in support of his claimed rate. That affidavit, however, is deficient. Notably, that affidavit is not in support of Fox's claimed rate, but rather, it is an affidavit Strauss submitted in 2012 in support of *his* application for fees in *White v. Gratto DDJDC*, where he was seeking a rate of $550.00 per hour. (*See* Corcoran's Exhibit H.) It provides no opinion, let alone any evidence, of why Fox's claimed rate of $510 is reasonable. On that reason alone, the Court should disregard Strauss's affidavit.

The affidavit should be ignored for two additional reasons. First, the affidavit lacks any evidence of what comparable attorneys charge for similar services. The Seventh Circuit has

---

settled without the court's intervention. Thus, no court found that those rates were reasonable, and those cases fail to shed any light on why Fox's requested rate *in this case* is reasonable.

criticized third-party affidavits "that merely opine on [the attorney's] market rate," preferring instead "affidavits that actually provide evidence as to what the comparable attorneys charge for similar services." *Pickett*, 644 F.3d at 647 (citing *Batt v. Micro Warehouse*, 241 F.3d 891, 895 (7th Cir. 2001)).    Here, the affidavit outlines Strauss's experience and opines that "[he] believe[s] from what [he has] learned that $550.00/hr. for [his] time is within the market range of the hourly billing rates charged by and awarded to plaintiffs' attorneys who handle federal civil rights litigation who have similar experience and qualifications . . . ." *Id.*  The affidavit lacks any evidence of what comparable attorneys charge for similar services and, without that support, the Court cannot evaluate how Fox's requested rate compares to "the hourly rates that attorneys of comparable skill, experience, and reputation charge for similar work." *Duran v. Town of Cicero*, 2012 U.S. Dist. LEXIS 52672, at *16-17 (N.D. Ill. Apr. 16, 2012) (finding similar affidavits to be "of no help").

Further, Strauss has substantially more experience than Fox does, as Strauss has been practicing law for nearly a decade longer than Fox has.  For these reasons, Fox's reliance on Strauss's affidavit for his claimed rate of $510 per hour is futile.

Finally, Fox's claimed rate is excessive in comparison to that of the City's attorneys. Throughout this matter, the City has paid a rate of only $250 or $275 per hour for the services of its lead attorney, James F. Botana.  (Exhibit F, Aff. of James F. Botana.)  Botana has over 20 years of litigation experience, including extensive experience in employment law and very significant trial experience. (*Id.*)  His services are even more valuable to the City because he is a former member of the City's Law Department, and thus has great familiarity with the City and its practices. (*Id.*)

The Seventh Circuit has found that "[t]he rates charged by the defendant's attorneys [can] provide a useful guide to rates customarily charged" in the type of case at issue. *Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760, 768 n.18 (7th Cir. 1982). Here, the rates paid by the City for its attorneys are not just a "useful guide;" rather, given the deficiencies in Fox's submission, they are *the only competent evidence* before the Court of what Fox's rate should be. As explained herein, Fox provides no valid evidence "that [his] requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum*, 465 U.S. at n. 11. The only relevant evidence before the Court is that the City paid only $250 or $275 per hour for a lawyer of similar skill and reputation in this very case.

Given all the factors above, Fox cannot justify a rate any greater than $415.24 per hour. As described above, Fox recently submitted an affidavit in another case where he stated, under oath, that "his hourly rate to billed clients was then $400.00 per hour." (*See* Exhibit G.)[8] Just two short years later, Fox now seeks a $110 increase in his hourly rate for this litigation. Such an increase is not supported in any respect. *See Gibson*, 873 F.Supp.2d at 984-85 (finding that a $100 increase per hour over a 2.5 year period was unwarranted). To account for any inflation that may have occurred over the two years since Fox admitted that his rate was $400 per hour, his rate should be set at no greater than $415.24 per hour. *See* CPI Inflation Calculator at the Bureau of Labor Statistics; http://www.bls.gov/data/inflation_calculator.htm; Exhibit H.

### 3. Ksiazek's Rate

Ksiazek's requested rate of $300 per hour is excessive for several of the same reasons described above. First, Ksiazek points to several cases as "ample support" for his rate because

---

[8]     Although the affidavit may have been submitted in 2011, the fee petition in that case was decided in 2012 and evaluated Fox's rate of $400 per hour at that time. (*See* Exhibit G.)

attorneys with "comparable experience" have been awarded "similar rates" in the Northern District of Illinois. (Petition at 16; Corcoran's Exhibit D at ¶13.) Besides citing the number of years the attorneys have been practicing, Ksiazek provides no other evidence to support the proposition that he shares similar experience with any of the attorneys. Indeed, if the Court uses that comparison as it sole means of evaluating the reasonableness of Ksiazek's rate, then the cited cases support the proposition that Ksiazek should be awarded a rate less than $300 per hour. In *Warfield v. City of Chicago,* 733 F. Supp. 2d 950, 960 (N.D. Ill. 2010), for example, an attorney with a year more experience than Ksiazek was awarded a rate less than what Ksiazek requests here. Similarly, none of the attorneys in the cited cases, ranging in years of experience from five to seven years, were awarded $300 per hour. In the only case Ksiazek cites where an attorney was awarded a rate of $300 per hour – *Jiminez v. City of Chicago,* Case No. 09-cv-8081 – that attorney was significantly more experienced than Ksiazek. The attorney, Aaron Mandell, was awarded $300 per hour as an attorney with eight years of experience at that time, which is at least two more years than Ksiazek.

Further, if the level of seniority dictates what Ksiazek's claimed rate should be, then what the City was charged for its attorneys is the best evidence. As identified above, throughout this matter, the City has paid a rate of only $250 or $275 for the services of its lead attorney, Botana, as well as for Neil Dishman, the partner that tried the case with Botana. The City has paid a rate of $220 or $225 per hour for the services of Stephanie E.H. Shirley and Paul J. Stroka, the associates assigned to this case, both of whom are more experienced than Ksiazek. (Exhibit I, Aff. of Stephanie E.H. Shirley; Exhibit J, Aff. of Paul J. Stroka.) It is nonsensical that Ksiazek, a sixth-year associate, would receive an hourly rate more than the partners that tried the case for the City. Therefore, Ksiazek should be awarded a rate no more than $250 per hour.

## IV.    CALCULATION OF THE LODESTAR

Given the necessary reductions in hours, as well as the reduction in Fox's and Ksiazek's

rates, the lodestar should be calculated as follows:

| Lawyer | Hours | Rate | Total |
|---|---|---|---|
| Fox | 72.245 | $415.23 | $29,998.29 |
| Ksiazek | 354.36 | $250.00 | $87,590.00 |
| **TOTAL** | | | **$118,588.29** |

If the Court is inclined to grant Corcoran any expenses or costs, it should be no more than

$2,716.71, for a total lodestar (fees plus expenses) of $121,305.00.

## V.    REDUCTION OF THE LODESTAR

As noted above, the "the most critical factor" for adjusting the lodestar is "the degree of

success obtained." *Hensley*, 461 U.S. at 436. *Hensley* and its progeny allow for a reduced fee

award where the plaintiff fails to obtain all that he reasonably could have asked for and achieves

only partial or limited success. In such a case, the lodestar amount – the product of the number

of attorney's hours reasonably expended on the litigation as a whole times a reasonable hourly

rate – is likely to be excessive. Thus, a reduced fee award is appropriate if the relief, however

significant, is limited in comparison to the scope of the litigation as a whole. *Bryant v. City of

Chicago*, 200 F.3d 1092, 1101 (7th Cir. 2000) (quoting *Spanish Action Comm. v. City of

Chicago*, 811 F.2d 1129, 1133 (7th Cir. 1987)).

Here, depending on the outcome of the City's post-trial motions, the lodestar may require

a reduction due to Corcoran's minimal success. For example, if the Court grants the City's

motion for judgment notwithstanding the verdict (D.E. #168-169), Corcoran would not be

entitled to any fees because he no longer would be the prevailing party. Similarly, if the Court

grants the City's motion for remittitur, in whole or in part, the lodestar would require a reduction

due to Corcoran's limited success. *See, e.g., Grauer v. Donovan*, 1996 U.S. Dist. LEXIS 2082 (N.D. Ill. Feb. 22, 1996) (reducing plaintiff's fees by twenty percent based on the plaintiff's overall success in light of the Court's remittitur of award from $50,000 to $25,000); *Jonasson v. Lutheran Child & Family Servs.*, 1996 U.S. Dist. LEXIS 8088 (N.D. Ill. Jun. 11, 1996) (reducing plaintiff's attorneys' hourly rate to account for his limited success based on the Court's remittitur of compensatory damage award from $100,000 to $20,000).

For these reasons, depending on the outcome of the City's post-trial motions, an overall reduction to the lodestar may be appropriate. The City is unable to suggest a specific percentage for that reduction at this time because the Court has yet to rule on its post-trial motions. If the Court later grants either of those motions, the City suggests the Court then allow it to file a supplement to this Response to more specifically address that issue.

## VI.     CONCLUSION

In sum, the Court should disallow Corcoran's counsel's excessive and redundant hours and reduce their claimed hourly rates to a level commensurate with their experience as described herein.

Dated: August 6, 2014                    Respectfully submitted,

**CITY OF CHICAGO**

By: /s/ James F. Botana
       One of Its Attorneys

James F. Botana
Neil H. Dishman
Stephanie E. H. Shirley
Paul J. Stroka
Jackson Lewis P.C.
150 N. Michigan Ave.,
Suite 2500
Chicago, Illinois 60601
(312) 787-4949

## CERTIFICATE OF SERVICE

I, James F. Botana, an attorney, certify that on this 6th day of August, 2014, he cause a copy of the foregoing *Defendant's Response To Plaintiff's Petition For Attorney's Fees* to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following attorney of record:

Ed Fox
Jonathan Ksiazek
Ed Fox & Associates
300 W. Adams Street
Suite 330
Chicago, Illinois 60606


/s/ James F. Botana

25