**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| BRIAN CORCORAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 10-cv-06825 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| THE CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Brian Corcoran is a police officer employed by Defendant City of Chicago ("the City"). Corcoran sued the City alleging that he was subjected to retaliatory harassment by his superiors after he reported hearing one of his supervising sergeants use a racial slur in reference to a fellow officer. Corcoran claimed that this harassment violated Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*. After a two-week trial, a jury returned a verdict in his favor and awarded him $134,000 in compensatory damages. Now before the Court is the City's post-trial motion pursuant to Federal Rule of Civil Procedure 50(b) for judgment as a matter of law. (Dkt. No. 168.) For the reasons detailed below, the City's motion is denied.

## BACKGROUND

In April 2009, Corcoran and Alvin Campbell were officers of the Chicago Police Department assigned to the Department's 18th District. One of their shift supervisors was Sergeant Kelly Braithwaite. Corcoran and Braithwaite are Caucasian; Campbell is African-American. At trial, Corcoran testified that, on April 11, 2009, he heard Braithwaite refer to Campbell using a racial slur along with the words "fat" and "lazy" as Campbell walked by them at the District station. (Corcoran Test. 1140, 1142, Dkt. No. 180.) According to Corcoran, he

informed Campbell about Brathwaite's comment the next day. (*Id.* at 1144.) Two days later, on April 13, 2009, Campbell reported the alleged comment to Braithwaite's superior, Captain Randy Zawis. (Campbell Test. 544, Dkt. No. 177.) Campbell also told Zawis that Corcoran was the source of the information. (*Id.*) Zawis immediately initiated the Department's formal complaint review process, which triggered an internal investigation of the allegation. (Zawis Test. 108-10, Dkt. No. 175.) Braithwaite denied making the alleged statement and the Department's independent review authority ultimately found that there was insufficient evidence to prove or disprove the allegation. (Braithwaite Test. 302, 305, Dkt. No. 176.)

Corcoran testified at trial that he began to be harassed immediately after reporting Braithwaite's slur. (*See, e.g.*, Corcoran Test. 1146, 1149, 1152, 1157-58, 1164-65, 1167, 1169, 1172, 1176, 1187, 1201, 1215-16, Dkt. No. 180.) He claimed that he was assigned to a beat known as the "punishment car" (*Id.* at 1172); that he and anyone assigned to the "punishment car" along with him were subjected to heightened supervision and additional work restrictions that no other officers in the District were required to endure (*Id.* at 1149, 1157-58, 1164-65, 1167, 1170); and that he received unwarranted discipline and counseling (*Id.* at 1191).

At the conclusion of Corcoran's case-in-chief, the City moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a). That motion was denied. The jury subsequently returned a verdict in Corcoran's favor and awarded him $134,000 in compensatory damages.[1] The City now renews its motion for a judgment as a matter of law pursuant to Rule 50(b). The motion raises two arguments. First, the City contends that the retaliation of which Corcoran complains did not constitute a materially adverse employment action within the

---

[1] The City also has filed a motion pursuant to Federal Rule of Civil Procedure 59(e) for remittitur of the compensatory damages award. (Dkt. No. 171.) The Court addresses that motion in a separate order issued contemporaneously herewith.

meaning of Title VII. Second, the City argues that Corcoran did not engage in activity protected by Title VII. Both arguments fail.

## DISCUSSION

### I.     Standard of Review

Federal Rule of Civil Procedure 50 allows a district court to enter judgment as a matter of law against a party who has been fully heard at trial if "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1); *see also Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 149 (2000). In deciding a Rule 50 motion, a district court should review all of the evidence in the record but nonetheless draw all reasonable inferences in favor of the nonmoving party. *Reeves*, 530 U.S. at 150. The district court also must refrain from making credibility determinations or weighing the evidence, as "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* Put another way, "the court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses." *Id.*

### II.     The City's Materially Adverse Employment Actions

Corcoran's complaint sought relief under Title VII, which makes it unlawful to discriminate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). The City correctly notes that Title VII's prohibition of retaliation against protected activity extends only to employer actions that are "materially adverse." *Lapka v.*

*Chertoff,* 517 F.3d 974, 985 (7th Cir. 2008). An employment action is materially adverse if it might have dissuaded a reasonable worker from making or supporting a charge of discrimination. *Id.* at 986. In this case, the City argues that the retaliatory actions about which Corcoran complains cannot be considered materially adverse actions as a matter of law.

Several of the job changes Corcoran identified as retaliatory relate to his reassignment to a specific beat at approximately the time he informed Campbell of Braithwaite's slur. The beat was confined to two buildings in the Cabrini Green housing complex. Although the City presented evidence that the reassignment decision was made earlier, the parties stipulated that Corcoran's first day on the beat, identified within the District as #1822F, was April 16, 2009. Corcoran testified that the beat came to be known within the District as the "punishment car." (Corcoran Test. 1172, Dkt. No. 180.) Other officers confirmed the use of this label to characterize the beat. (Braithwaite Test. 307, Dkt. No. 176; Dinwiddie Test. 411, Dkt. No. 176; Martin Test. 464, Dkt. No. 176.)

Corcoran also testified that his superiors imposed ever-increasing restrictions on his activities in patrolling the #1822F beat. He said that he was required to get permission from a supervisor to get gas or a car wash for his patrol car, a requirement he had never seen imposed before. (Corcoran Test. 1170-71, Dkt. No. 180.) He further testified that he was initially told that he was to be stationed in his patrol car between the two buildings, later told that he was to be inside the buildings, and then told that he was to walk up and down the seven flights of stairs in each building every hour. (*Id.* at 1148-49, 1159, 1161-62.) Corcoran asserted that the patrol car was taken away from the beat altogether during the summer of 2009 and that he and any partner assigned to the beat with him had to walk from the district station to the post for each shift during that period. (*Id.* at 1167-68.)

According to Corcoran, his supervisors came to check on him during his shift several times daily. (*Id.* at 1164-65, 1172.) He said that the restrictions and scrutiny he faced on beat #1822F were greater than those imposed on other officers. (*Id.* at 1170.) The testimony of other officers supported this view. (Zawis Test. 269, Dkt. No. 175; Dinwiddie Test. 405-06, Dkt. No. 176; Greenup Test. 746, Dkt. No. 177.) One officer even sought reassignment from partnership with Corcoran on the #1822F beat because of the heightened scrutiny that he received. (Dinwiddie Test. 409-10, Dkt. No. 176.)

In addition, Corcoran presented evidence that his superiors initiated disciplinary actions against him with false accusations, including allegations that he had been late for and missed shift-end roll calls when he had actually been present. (Corcoran Test. 1182, 1188, Dkt. No. 180.) One of the charges resulted in his suspension for a day and the loss of approximately $300 in pay. (*Id.* at 1190-91.) Two of the charges were overturned. (*Id.* at 1183, 1203.) Corcoran also said that a holiday leave request that should have been granted on the basis of his seniority was denied by his superiors until his union representative interceded. (*Id.* at 1235-37.)

The City contends that the actions Corcoran cites are, as a matter of law, not materially adverse actions. It cites *Washington v. Illinois Department of Revenue,* 420 F.3d 658, 662 (7th Cir. 2005), for the proposition that "[b]y and large a reassignment that does not affect pay or promotion opportunities lacks [the] potential to dissuade and thus is not actionable." The statement referenced by the City is not the end of the *Washington* court's analysis, however. The court continued: "But 'by and large' differs from 'never.'" *Id.* The court goes on explicitly to acknowledge that the materiality of an allegedly adverse employment action is dependent on context. *Id.* at 661. Furthermore, the court observes that a retaliatory response that would be immaterial to a self-interested plaintiff's own discrimination charge could nonetheless meet the

materiality standard for retaliation against support of another person's charge: "[P]etty bureaucratic nastiness does not dissuade a reasonable person from seeking a substantial increase in income. If instead of seeking money for himself the employee supported a colleague's charge of discrimination, however, this sort of response might induce the employee to withhold support; it takes less to deter an altruistic act than to deter a self-interested one." *Id.* at 661-62.

Furthermore, employment actions have been recognized as materially adverse even in the absence of financial loss or career injury. Such actions include those that subject the employee to a "humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative alteration in his workplace environment . . . [T]he classic case being that of the employee whose desk is moved into a closet." *Herrnreiter v. Chicago Hous. Auth.,* 315 F.3d 742, 744 (7th Cir. 2002). In *Burlington North & Santa Fe Railway Co. v. White,* 548 U.S. 53 (2006), for example, the Supreme Court rejected an argument that a reassignment of job duties could not be considered a materially adverse change if all of the duties were included in the employee's prior job description:

> Almost every job category involves some responsibilities and duties that are less desirable than others. Common sense suggests that one good way to discourage an employee . . . from bringing discrimination charges would be to insist that she spend more time performing the more arduous duties and less time performing those that are easier or more agreeable. That is presumably why the EEOC has consistently found retaliatory work assignments to be a classic and widely recognized example of forbidden retaliation.

548 U.S. at 70-71 (citation and internal quotation marks omitted).

Similarly, the Seventh Circuit, in emphasizing the breadth of retaliatory employment actions prohibited by Title VII, has observed that materially adverse actions under the statute could include those actions that "put the complainant in a more unfriendly working environment," and listed as one example actions "depriving the person of previously available

support services (like secretarial help or a desktop computer)." *Knox v. State of Indiana,* 93 F.3d 1327, 1334 (7th Cir. 1996). In *Flanagan v. Office of the Chief Judge of the Circuit Court of Cook County.,* No. 06-cv-1462, 2007 WL 2875726 (N.D. Ill. Sept. 28, 2007), the plaintiff claimed that a retaliatory reassignment subjected her to "heightened scrutiny" that made coworkers complain about being assigned to partner with her. *Id.* at *8. This heightened scrutiny was considered by the court to be "the strongest evidence in support of her retaliation claim" and contributed to the court's finding that the jury verdict in the plaintiff's favor was rational and that the defendant's motion for judgment as a matter of law was properly denied. *Id.*

It is thus apparent that context may permit an employment action to be considered a materially adverse change and actionable under Title VII despite the fact that it did not result in lost pay, damaged career prospects, or a reduction in rank, and despite the fact that newly assigned duties were within the prior boundaries of the employee's role.

The evidence presented by Corcoran in the present case included substantial testimony that the work conditions he faced after alerting Campbell to Braithwaite's alleged slur were considered by his fellow officers to be worse than normal. He was reassigned to a beat widely considered to be "punishment," one of his superiors conceded that he was watched more closely than other officers, his fellow officers noticed the differential treatment and at least one asked to be excused from assignments with him because of that treatment, and he was subjected to two disciplinary actions that were eventually determined to be unfounded. This evidence is sufficient to show more than a mere subjective dislike for Corcoran's post-reassignment work conditions; instead, it is sufficient to show that a reasonable employee in his position would consider the post-complaint conditions significantly worse than those he previously worked under. Thus a rational jury could find that the worsened conditions were enough to deter a reasonable employee

from supporting his co-worker's discrimination charge. The Court therefore cannot conclude the changes in job conditions about which Corcoran complains were, as a matter of law, too trivial to be considered materially adverse for Title VII purposes.

## III. Corcoran's Protected Activity

In support of its next argument, the City correctly notes that Title VII prohibits retaliation only against specified activities. The statutory protects an employee who has "opposed any practice made an unlawful practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). The City claims that Corcoran cannot claim to have opposed a discriminatory practice because he took no formal or active steps to alert his superiors to the alleged discrimination and instead only spoke to Campbell on an informal basis.[2]

The City argues that merely providing spiritual guidance or friendship to a complaining co-worker is not protected activity. *Drake v. Minn. Min. & Mfg. Co.,* 134 F.3d 878, 886 (7th Cir. 1998). But it is undisputed that Corcoran did more than merely display friendship to Campbell: he alerted Campbell to the Braithwaite comments that formed the basis of Campbell's own discrimination claim. Without Corcoran's action, there would have been no claim and no resulting investigation. No evidence suggests that Campbell had previously been aware of any racial animus from Braithwaite or that he would have become aware of it without Corcoran's input. Title VII explicitly protects "all who 'assist' or 'participate'" in a Title VII charge "in any manner." *Eichman v. Ind. State Univ. Bd. of Trustees,* 597 F.2d 1104, 1107 (7th Cir. 1979). Informing an otherwise unwary target about discriminatory animus against him plainly assists the discrimination charge that follows. Assistance in the preparation of later-filed charges is

---

[2] Corcoran was transferred out of the District on May 16, 2010. (Corcoran Test. 1241, Dkt. No. 180.) Because Corcoran's internal investigation interview took place on September 10, 2010 (Corcoran Test. 1259-60, Dkt. No. 180), that interview is not relevant to the Court's present analysis.

protected from retaliation by Title VII. *Bowden v. Kirkland & Ellis LLP,* Nos. 07-cv-975, 07-cv-979, 2010 WL 3526483, at *17 (N.D. Ill. Sept. 3, 2010). Assisting a fellow employee with his discrimination claim is also considered to be opposition conduct protected by the statute. *McDonnell v. Cisneros,* 84 F.3d 256, 262 (7th Cir. 1996).

The City further argues that Corcoran's activities are not protected by Title VII because he could not have held a reasonable, good faith belief that Braithwaite's single alleged slur was sufficient to constitute unlawful discrimination. It is true that a good faith, reasonable belief that one's actions oppose unlawful discrimination is a necessary element of a Title VII retaliation claim. *Fine v. Ryan Intern. Airlines,* 305 F.3d 746, 752 (7th Cir. 2002). A plaintiff's belief that he has opposed unlawful discrimination need not be correct, however; it is only necessary that the belief not be "completely groundless." *Id.* A plaintiff's belief in the unlawful nature of a single use of the slur alleged here is not so completely groundless as to deny protection to conduct that opposes it. *Alexander v. Gerhardt Enters., Inc.,* 40 F.3d 187, 195-96 (7th Cir. 1994) (finding that district court did not clearly err in finding that plaintiff reasonably believing that a single racial slur was racially offensive and violated the law). When made by a supervisor, a single use of the alleged slur may be relevant to show an employer's discriminatory intent. *See Diaz v. Elgin Sch. Dist. No. U-46,* No. 09-cv-1649, 2011 WL 4431173, at *8-9 (N.D. Ill. Sept, 22, 2011) (citing authority that a single slur may be sufficient evidence of discriminatory intent to defeat summary judgment). Accordingly, the jury could rationally find that Corcoran alerted Campbell based upon a good faith belief that Braithwaite's slur was evidence of unlawful discrimination, even if that slur would not have been actionable.

## CONCLUSION

For the foregoing reasons, the City's renewed motion for judgment as a matter of law is denied.

ENTERED:

Dated:  March 23, 2015

Andrea R. Wood
United States District Judge